**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Walter WILLIAMS, a/k/a John Smith, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 2000.

Filed May 31, 2000.

Karl Baker, Public Defender, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, J., EAKIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 Appellant, Walter Williams, appeals from the Judgment of Sentence imposed by the Trial Court after it convicted him of three counts of criminal contempt of court.[1]   After review, we vacate and remand for resentencing.

¶ 2 In October of 1995, Appellant pled guilty to robbery and was sentenced by The Honorable Rayford A. Means of the Court of Common Pleas of Philadelphia to a term of six (6) to twenty-three (23) months imprisonment followed by a term of two (2) years probation.   After imposing

1.  42 Pa.C.S.A. § 4132.

sentence, Judge Means immediately paroled Appellant.

¶ 3 In 1997, Appellant was arrested twice due to two different sets of criminal charges lodged against him. The first set of criminal charges concerned Appellant's alleged possession of narcotics and the second set pertained to an alleged theft committed by Appellant. With respect to the first set of charges, Appellant subsequently pled guilty to possession of cocaine.

¶ 4 As a result of Appellant's apparent continuation of his pattern of criminal behavior, Judge Means scheduled a probation revocation hearing for Appellant. Judge Means conducted this hearing on March 5, 1998. At the conclusion of this hearing, Judge Means revoked the sentence of probation which he had previously given Appellant on the 1995 robbery charge and he sentenced Appellant to two and one-half (2 1/2) to five (5) years imprisonment.

¶ 5 After sentencing, as Appellant was being led from the courtroom, he apparently elected to express his dissatisfaction at Judge Means' choice of sentence. Appellant did so by raising his middle finger and stating, "F—k You" to Judge Means. Consequently, Judge Means ordered the Appellant brought back before him for a summary contempt proceeding. N.T., Probation Revocation Hearing, 3/5/98 at 10.

¶ 6 The record of testimony reflects that Judge Means stated that he found Appellant to be in contempt for his act of stating the words "F—k You" and also for the act of raising his middle finger. *Id.* at 11. As a result, Judge Means stated that it was his intent to impose a sentence of five (5) months and twenty-nine (29) days for each act, and also that it was his intent for the sentences to run consecutively. *Id.* Judge Means additionally ordered both contempt sentences to run consecutively to the sentence which he had just imposed for Appellant's 1995 robbery conviction.

¶ 7 Despite Judge Means express statement, the record in this matter reveals that **three** (3) separate complaints charging Appellant with criminal contempt were filed in this matter. These complaints were docketed at Municipal Court No.'s 9803–1459, 9803–1460, and 9803–1461. The written judgment of sentence entered in each case was a flat sentence of five (5) months and twenty-nine (29) days incarceration ordered to run consecutively to Appellant's sentence on the 1995 robbery charge.

¶ 8 Appellant ostensibly filed a Motion to Modify Sentence with the Trial Court which was denied on March 17, 1998.[2] Appellant filed a notice of appeal on March 26, 1998 from the judgment of sentence imposed after revocation of his probation on the 1995 robbery conviction. The Trial Court then issued an order on March 31, 1998 directing Appellant to file a concise statement of matters complained of on appeal within fourteen (14) days. Appellant did not file such a statement within the time period specified by the order.

¶ 9 Appellant filed another notice of appeal on April 16, 1998. This appeal was from the judgment of sentence imposed in the three criminal contempt cases. In response, the Trial Court issued another order that same day directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) within fourteen (14) days. Appellant did not file a Rule 1925(b) statement within the time period allowed by this order.

¶ 10 Hence, on June 8, 1998 the Trial Court prepared an Opinion in which it addressed only the issue which the Appellant had apparently raised in his posttrial motions, namely whether the sentence imposed for Appellant's violation of probation was excessive. The Trial Court did not

**2.** A copy of this motion to modify sentence is not contained in the certified record transmitted to our Court on appeal, but the motion's existence and denial was referenced by Appellant in both Notices of Appeal which he filed with the Trial Court.

address any issue in this opinion relating to its finding of Appellant in criminal contempt.

¶ 11 Appellant eventually filed a Statement of Matters Complained of on Appeal with the Trial Court on August 20, 1998. This statement contains four of the five issues presented by Appellant in his consolidated brief to our Court and also an additional issue concerning the sentence of the Appellant on the 1995 robbery conviction. On August 21, 1998, Appellant sought leave of our Court to consolidate both appeals and also an order requiring the Trial Court to transcribe the Notes of Testimony of the March 5, 1998 hearing. Our Court entered an order on December 9, 1998 consolidating both appeals and directing the Trial Court to transcribe the notes of testimony of the probation revocation hearing. However, the Trial Court failed to comply with this order. Appellant petitioned our Court again on May 28, 1999 to have the Trial Court transcribe the revocation hearing, and our Court issued another order on July 1, 1999 again ordering the Trial Court to prepare a transcript of that hearing. Finally on July 21, 1999 the transcript of the probation revocation hearing was lodged with our Court.

¶ 12 Appellant presents five (5) issues in his "consolidated brief" for our Court's consideration:

    1. Was there insufficient evidence for holding appellant in contempt of

court, in that there was no proof that he possessed the requisite intent to obstruct justice, or that an obstruction of justice occurred?

    2. Is not appellant entitled to a jury trial when he received an aggregate of consecutive sentences for multiple counts of criminal contempt exceeding six months?

    3. Assuming arguendo that appellant's conduct was contemptuous, does not the imposition of multiple sentences for the same act of misconduct or transaction violate the double jeopardy clauses of the Pennsylvania Constitution and the United States Constitution?

    4. Must not appellant be resentenced where the flat sentences of five months, twenty-nine days incarceration on three counts of contempt are illegal as they fail to include a minimum and maximum term as required in 42 Pa.C.S.A. § 9756(b)?

    5. Were not trial and appellate counsel ineffective for not preserving and raising the issues presented in this brief?

Appellant's Brief at 4.[3]

¶ 13 The Commonwealth has asserted that we should find Appellant's issues waived for failure to timely file a Rule 1925(b) statement. However, we decline to do so. Appellant did file a Rule 1925(b) statement, albeit late.[4] Although the Trial

---

**3.** The issue pertaining to the robbery sentence contained in Appellant's Statement of Matters Complained of on Appeal has not been presented by Appellant to our Court in his brief, hence we deem it to have been abandoned. *See In re J.M.*, 556 Pa. 63, 83, n. 15, 726 A.2d 1041, 1051, n. 15 (1999) (issues not preserved for appellate review may not be considered by an appellate court).

**4.** We certainly do not condone Appellant's failure to file such a statement within the time specified by the trial judge's order. Our Supreme Court has held in *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998) that an appellant's filing of such a statement is mandatory whenever ordered by the trial court and, if not filed, all appellate

claims will be deemed waived. In *Commonwealth v. Overby*, 744 A.2d 797 (Pa.Super.2000) our Court relied on *Lord* to hold that even if an appellant files a Rule 1925(b) statement, but does so beyond the time allowed in the trial judge's order for filing such a statement, the issues raised in the statement will likewise not be preserved for appellate review.

    Nevertheless, *Lord* and *Overby* do not mandate waiver in the instant case. *Lord* was decided on October 28, 1998 and the Supreme Court indicated that its holding was prospective in nature. The Trial Court in the case at bar issued its orders requiring Appellant to file a Rule 1925(b) statement many months before *Lord* was handed down, thus

Court did not write an opinion addressing the issues which Appellant raised in his 1925(b) statement, the certified record before us is sufficient for us to conduct a meaningful review of Appellant's issues. Thus, we will address Appellant's issues and need not remand for the preparation of a Trial Court Opinion. This is in accordance with our Court's similar action in prior cases. *See e.g. Commonwealth v. Stilley*, 455 Pa.Super. 543, 689 A.2d 242, 247 (1997) (where appellant filed his Rule 1925 statement a year late and trial court did not write opinion addressing issues contained in statement, our Court did not find appellant's issues to have been waived nor did we remand case for preparation of opinion because record was sufficient to permit appellate review); *Commonwealth v.Taylor*, 448 Pa.Super. 238, 671 A.2d 235, 239 (1996), *appeal denied*, 546 Pa. 642, 683 A.2d 881 (1996) (where appellant failed to file Rule 1925(b) statement because transcription of notes of testimony was not complete and trial court did not address issue in its opinion, our Court was not hampered by the lack of a trial court opinion and did not find appellant's issue waived since certified record was sufficient to permit appellate review).

■ ¶ 14 Appellant first argues that the evidence was insufficient to sustain the Trial Judge's finding of him in criminal contempt for his courtroom behavior. We begin by noting our standard of review of such a claim. As our Court has stated in a prior case:

[I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision.

*Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28, 31–32 (1987) (internal citations omitted); *Accord Ricci v. Geary*, 447 Pa.Super. 609, 670 A.2d 190, 191 (1996). In making this examination: "we must evaluate the entire record and consider all evidence actually received." *Commonwealth v. Falana*, 548 Pa. 156, 161, 696 A.2d 126, 128 (1997) quoting *Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986).

¶ 15 A court's power to find an individual in criminal contempt is conferred by Section 4132 of the Judiciary Code, which provides in relevant part:

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

\*　　\*　　\*

■ (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132(3). Consequently, to sustain a conviction for direct criminal contempt under this provision there must be proof beyond a reasonable doubt: (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice. *Williams v. Williams*, 554 Pa. 465, 469, 721 A.2d 1072, 1073 (1998); *Commonwealth v. Martorano*, 387 Pa.Super. 79, 563 A.2d 1193, 1197 (1989), *appeal denied* 529 Pa. 632, 600 A.2d 952 (1991).

■ ¶ 16 Appellant does not dispute that his choice of verbal epithet and contemporaneous gesture with his middle finger constituted misconduct. Misconduct is

---

*Lord* and its progeny are inapplicable. However, we must caution Appellant's counsel that failure to timely file such a statement when ordered may, in future cases, result in waiver of issues for appellate review pursuant to *Lord* and *Overby*.

behavior that is inappropriate to the actor. *Williams, supra* at 721 A.2d at 1074; *Commonwealth v. Jones*, 700 A.2d 1008, 1012 (Pa.Super.1997). Clearly, offensive words and gestures such as Appellant's have no place whatsoever in a court of law or in civilized society in general. *See e.g. Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1292 (Pa.Super.1997) (direction of profanity at trial judge one of the types of behaviors which is "inappropriate and unacceptable by any person appearing before the court"). The proper method for a defendant in Appellant's position to challenge the propriety of his or her sentence is through appropriate legal means such as a motion to reconsider sentence or an appeal, not through crude displays of rudeness directed towards the sentencing judge.

■ ¶ 17 Appellant also does not dispute that his statement and accompanying gesture was made in the presence of the Trial Judge. However, Appellant argues that there was insufficient evidence of any intent on his part to obstruct judicial proceedings or any actual obstruction of justice which could support a contempt conviction. After review of the relevant caselaw on this subject we must disagree.

■ ¶ 18 As stated in *Williams, supra,* the third requirement that must be shown for a criminal contempt conviction to stand is the intent of the contemnor to obstruct the proceedings. As our Court has established: "There is wrongful intent if the contemnor knows or should reasonably be aware that his conduct is wrongful." *In re Adams*, 435 Pa.Super. 202, 645 A.2d 269, 272 (1994), *appeal denied*, 539 Pa. 686, 653 A.2d 1225 (1994); *Accord Mutzabaugh, supra*, 699 A.2d at 1292. We do not hesitate to conclude that Appellant should have reasonably been aware that his conduct was wrongful under the circumstances. Appellant was of adult age, and of ostensibly normal intelligence and education. He also had prior experience with the court system. He therefore should have been cognizant of the proper demeanor and standards of behavior appropriate for a court of law.

¶ 19 We find support for this conclusion from our Court's prior holding in *Mutzabaugh supra*. In *Mutzabaugh* the trial judge was conducting a colloquy on appellant's request for early parole or work release from jail. The appellant became angered during the colloquy and began to vociferously complain of the alleged injustice of his conviction. As a result, the trial judge terminated the proceedings by stating that "we're done." At that point the appellant got up from his chair and walked to the door. As he passed the trial judge he stated: "You can go to hell. F—k you." Appellant was thereupon apprehended by a deputy sheriff as he attempted to exit the courtroom.

¶ 20 In concluding that the appellant demonstrated the requisite intent to obstruct justice our Court considered appellant's prior experience with the court system and the basic elemental deductive reasoning every human being is deemed to possess. We said:

> [A]ppellant has appeared before the court as a criminal defendant on several prior occasions. As such, he would be aware of the seriousness of court proceedings, the proper decorum to be observed during such proceedings and the proper respect to be accorded the trial judge. Moreover, it is unreasonable to suggest that even a person appearing in court for the first time would not realize that such egregious conduct, as that demonstrated by appellant in this case, was not wrongful.

*Id.* 699 A.2d at 1292. Hence we have no difficulty in holding that Appellant in the instant case, like the appellant in *Mutzabaugh*, possessed the requisite intent to obstruct justice by virtue of the fact that he should have been aware of the effect that his comment would have on courtroom proceedings. *Adams, supra*.

■ ¶ 21 The fourth and final requirement for Appellant's conviction to

stand is that his conduct must have constituted an actual obstruction of the administration of justice. As our Supreme Court has said: "To obstruct justice, conduct must significantly disrupt judicial proceedings ... [C]ontempt requires actual, imminent prejudice to a fair proceeding **or prejudice to the preservation of the court's orderly procedure and authority.**" *Williams, supra,* at 469–470, 721 A.2d at 1074 (emphasis supplied); *Falana, supra,* at 161, 696 A.2d at 128; *Behr v. Behr,* 548 Pa. 144, 149–150, 695 A.2d 776, 779 (1997).

¶ 22 We note that at the time Appellant made his remark, the probation revocation proceeding had not formally concluded. As we stated in *Mutzabaugh, supra:* "Court proceedings are concluded after the defendant leaves the courtroom, the trial judge goes to the next case or adjourns court and leaves the courtroom." 699 A.2d at 1293. Judge Means had just finished pronouncing sentence when Appellant made his gesture and accompanying epithet. The learned Judge remained on the bench and had not yet left the courtroom or moved on to another matter. Hence, we must conclude that Appellant's conduct took place during a judicial proceeding.

¶ 23 We also have no difficulty in concluding that Appellant's conduct amounted to an actual obstruction of justice. Judge Means had just finished sentencing Appellant to a term of incarceration for violating his probation when Appellant committed his outburst. By revoking Appellant's probation, Judge Means was publicly pronouncing that his prior choice of sentence was ineffective, due to Appellant's actions, in achieving the goals of rehabilitating the Appellant and protecting society. The Court, by sentencing Appellant to a term of incarceration, was therefore demonstrating the fulfillment of its proper obligation and authority to utilize further necessary means to achieve those goals. Appellant's reaction to the Court's imposition of sentence in open court was a clear effort on his part to brazenly demonstrate his repudiation of the Court's sentencing choice. He was thereby flagrantly scorning the Court's authority to impose such a sentence, as well as the goals the Court was seeking to achieve through that sentence. Thus, the Appellant was not merely personally attacking the Trial Judge through his actions but rather he was belittling the entire process of the administration of justice.

¶ 24 We agree with the Commonwealth that had the Court not acted in response to the Appellant's actions it would have eroded the Court's authority in the eyes of all those present. Commonwealth's brief at 9. As we have stated on a prior occasion:

> The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy.

*Martorano, supra,* 563 A.2d at 1200. In light of these factors we do not hesitate to decide that the Trial Court correctly acted in this instance to preserve its proper authority.

¶ 25 Appellant has cited to our Supreme Court's disposition in *Williams, supra,* in support of his argument that he should not have been found in contempt for his behavior. However, a review of the contemnor's conduct in *Williams* demonstrates that it did not approach the disruptive magnitude of Appellant's actions in the in the instant matter.

¶ 26 In *Williams* the appellant was an attorney embroiled in an unpleasant and highly contested custody dispute. He was representing himself during the custody hearing. At one point in the proceeding, the trial judge sustained an objection to a question which appellant had asked of a witness. At that point the appellant stat-

ed, as recorded in the stenographic record: "He's such a f—king a—hole." The trial judge did not personally hear this statement. However opposing counsel vigorously called the court's attention to appellant's statement. The trial judge convened a contempt hearing at which two witnesses testified to what appellant had said. The trial judge thereafter found the appellant in contempt of court. Our Court reversed in a published opinion.[5] The Supreme Court subsequently affirmed our Court's opinion.

¶ 27 In affirming, the Supreme Court specifically noted: "Opposing counsel claimed that Appellant made the remark under his breath. There is no indication that the remark was even heard by the court. The amplitude of such a remark can have a bearing on whether it was intended to obstruct proceedings." *Id.* at 469, 721 A.2d at 1074. Thus, the Court concluded that a single remark made by Appellant "under his breath" did not rise to the level of criminal contempt.

¶ 28 Appellant's comment in the instant case was not made "under his breath." He clearly and directly stated the words "F—k You" to the Trial Judge. To emphasize his verbal declaration Appellant elected to punctuate it with the simultaneous display of the middle finger. Unlike the attorney in *Williams*, Appellant's intent to disrupt was clear. His behavior consequently produced a considerably more disruptive effect on courtroom decorum and proceedings than the inaudible utterance in *Williams*, which the trial judge did not hear firsthand and only later learned of through others. As a result, *Williams* does not afford Appellant relief. We therefore find no abuse of discretion in the Trial Court's finding of Appellant to have been in criminal contempt.

¶ 29 We turn now to Appellant's claims regarding the specific sentence which the trial judge imposed. Appellant argues that the consecutive sentences which the trial judge imposed violated the double jeopardy clauses of the Pennsylvania and United State Constitutions. With this assertion, we must agree.

¶ 30 Article I Section 10 of the Pennsylvania Constitution provides in pertinent part that "[n]o person shall for the same offense, be twice put in jeopardy of life and limb ..." The Fifth Amendment to the United States Constitution also states "... nor shall any person be subject for the same offence to be twice put in jeopardy of life and limb ..." Our Supreme Court has emphatically recognized that these provisions prohibit multiple punishments for the same offense at trial. *Commonwealth v. Houtz*, 496 Pa. 345, 347, 437 A.2d 385, 386 (1981); *Accord Commonwealth v. Comer*, 552 Pa. 527, 537, 716 A.2d 593, 598 (1998). An individual may be punished only once for a single act which causes a single injury to the Commonwealth. *Commonwealth v. Owens*, 437 Pa.Super. 64, 649 A.2d 129, 137 (1994) *appeal denied*, 540 Pa. 612, 656 A.2d 118 (1995).

¶ 31 Our Supreme Court has also acknowledged that impermissible multiple punishments for a single offense can take the form of consecutive sentences. *Houtz*, at 348, 437 A.2d at 386. Therefore, in the case sub judice, in order for the Trial Court to have imposed multiple consecutive sentences, Appellant's conduct must have constituted two separate offenses i.e. two separate contemptuous acts. Clearly Appellant's conduct, though of a contemptuous nature, did not constitute multiple offenses allowing the imposition of separate punishments.

¶ 32 Appellant's verbal utterance and hand gesture were contemporaneously executed, and Appellant's hand gesture is universally recognized throughout Western civilization as having the same meaning as his foul utterance. As such, the statement and simultaneous gesture were so inextricably intertwined that they must be con-

---

5. *See Williams v. Williams*, 452 Pa.Super. 52, 681 A.2d 181 (1996).

sidered to have been one unified act of contemptuous misconduct directed toward the Trial Court. Consequently, the unified act constituted but a single violation of 42 Pa.C.S.A. § 4132(3). The three consecutive sentences which the trial court imposed for this one contemptuous act were therefore violative of the principles of double jeopardy and they must be vacated. As a result we will remand for resentencing on one count of criminal contempt alone.

¶ 33 As Appellant has also noted, the Trial Judge in imposing its original sentence failed to provide a minimum term of incarceration in its judgment of sentence. We agree with Appellant that this too was improper. As our Court has stated on a prior occasion:

> Criminal contempt is a crime punishable by imprisonment, so sentences must be imposed according to the Sentencing Code, 42 Pa.C.S.A § 9701 et seq. See *Commonwealth v. Falkenhan*, 306 Pa.Super. 330, 452 A.2d 750, 758 (1982), cert. denied, 464 U.S. 803, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983). The Code mandates that the sentencing court impose not only a maximum sentence, but also a minimum sentence which shall not exceed one-half the maximum 42 Pa.C.S.A. § 9756(b). A flat . . . sentence does not satisfy this requirement.

*Commonwealth v. Cain*, 432 Pa.Super. 47, 637 A.2d 656, 658 (1994). The Trial Court in reimposing its judgment of sentence for one count of criminal contempt shall therefore specify a minimum term of incarceration.[6]

¶ 34 Appellant has also claimed that he is entitled to a jury trial. The United States Supreme Court has held in *Codispoti v. Pennsylvania*, 418 U.S. 506, 515, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974) that an individual is entitled to a trial by jury on contempt charges only whenever two conditions are met: (1) the court postpones adjudication and sentence for contempt until the end of trial; and (2) the court imposes sentences which either alone, or when aggregated, exceed six months' imprisonment. *Accord Commonwealth v. Owens*, 496 Pa. 16, 25, 436 A.2d 129, 134 (1981).

¶ 35 Consequently, although we have vacated the judgment of sentence, on remand Appellant would clearly be entitled to a jury trial if the Trial Court elects to reimpose a sentence of greater than six (6) months incarceration. In sentencing for an offense such as criminal contempt, where the legislature has not specified a maximum permissible term of imprisonment, in order for the sentencing court to determine whether a jury trial is required it must consider the sentence which it actually chooses to impose. *Falkenhan, supra*, 452 A.2d at 758. "If the sentence

---

6. We are aware of our Court's decision in *Wagner v. Wagner*, 387 Pa.Super. 246, 564 A.2d 162 (1989), *appeal denied*, 525 Pa. 628, 578 A.2d 415 (1990) in which we held that a flat six (6) month sentence for indirect criminal contempt under the Protection From Abuse Act (35 P.S. §§ 10181–10190.2 repealed and now 23 Pa.C.S.A. § 6101 *et seq.*) was not illegal because of the trial court's failure to impose a minimum sentence. However, we read *Wagner* to apply only to sentences imposed as a result of indirect contempt proceedings brought under the express statutory provisions of the Protection From Abuse Act and not those imposed for direct criminal contempt. Indeed our Court in *Wagner* acknowledged this distinction.

We said:

> While a PFA proceeding is criminal in nature, it does not receive all of the protections that regular criminal proceedings receive. While criminal contempt is a crime, the sanctions imposed because of it are best left to the discretion of the offended court limited by only a few legislative restrictions. The PFA Act was enacted as specific remedial legislation and for this court to require that **contemnors under this Act** receive minimum as well as maximum sentences would only weaken the effectiveness of the Act.

*Id.* at 164 (emphasis supplied).

Thus, we deem *Cain* to be the controlling authority in the instant case since *Cain* involved a conviction for direct criminal contempt.

actually imposed is greater than six months, then the accused must be afforded an opportunity to be tried by jury[.]" *Id.* quoting *Commonwealth v. Mayberry,* 459 Pa. 91, 99, 327 A.2d 86, 90 (1974) (plurality). Thus, on remand if it is the intent of the Trial Court to impose a sentence of incarceration beyond six (6) months it shall leave Appellant's judgment of sentence vacated and grant Appellant a jury trial. However, if the Trial Court elects to sentence Appellant to a period of incarceration of less than six months then Appellant does not have the right to a jury trial. *Owens, supra.*

¶ 36 Judgment of Sentence vacated. Case remanded for resentencing. Jurisdiction is relinquished.[7]

---

7. In light of our disposition of Appellant's issues we need not reach Appellant's final alternative claim of alleged ineffectiveness of trial counsel in failing to raise these issues.