J-S32009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH GILLIS, | |
| Appellant | No. 2125 EDA 2015 |

Appeal from the Judgment of Sentence July 8, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007708-2009

BEFORE:  BOWES, MUNDY AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                     **FILED May 11, 2016**

Kenneth Gillis appeals from the judgment of sentence imposed on July 8, 2015. Following a summary conviction for direct criminal contempt,[1] Appellant was sentenced to two months and twenty-eight days to five months and twenty-nine days incarceration, to run consecutively to other sentences imposed at the same time.  We affirm.

The relevant facts and procedural history of this appeal are as follows. On February 9, 2009, Appellant was found in possession of 18.4 grams of crack-cocaine, 296 grams of marijuana, drug paraphernalia, and a firearm. Working in concert with others, Appellant engaged in eight controlled-buy

---

[1] 42 Pa.C.S. § 4132.

---

*  Retired Senior Judge assigned to the Superior Court.

drug transactions. As a result, the Commonwealth brought charges against Appellant for criminal conspiracy, possession of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), possession of a firearm by a person not to possess, possession of drug paraphernalia, and possessing instruments of a crime. Following these charges, Appellant began a long relationship with the trial court.[2]

On July 21, 2010, Appellant pled guilty to PWID and the court sentenced him to a negotiated sentence of eleven and one-half to twenty-three months incarceration plus two years probation with immediate parole.[3] Appellant was arrested on September 1, 2011, and again charged with possession of a controlled substance, for which he received twelve months probation. Appellant was subsequently found in direct violation of his parole and probation, for which the court terminated parole, revoked his probation, and sentenced Appellant to eleven and one-half to twenty-three months county incarceration plus seven years probation with immediate parole to house arrest. Almost one year later, Appellant was arrested after testing positively for cocaine, for which the court below found him in technical

---

[2] Appellant asserted he appeared before the trial court on at least thirteen occasions for matters associated with these charges. N.T. VOP Proceedings, 7/8/15, at 12.

[3] Appellant verified in his written guilty plea colloquy that he faced up to twenty years and a fine of up to $125,000 for the crimes he committed. Written Guilty Plea Colloquy, 7/21/10, at 1.

violation of his parole and probation. The court allowed him to remain on probation.

Subsequently, Appellant missed scheduled appointments with his probation officer, and thereafter, he failed to appear before the trial court for a status hearing. Appellant evaded all supervision, remaining at large until he was arrested on March 25, 2015. Appellant appeared before the court for a parole and probation violation hearing arising from his failure to appear at a scheduled hearing and ensuing disappearance. Appellant's counsel conceded he was in violation of parole for absconding.

The trial court found Appellant in contempt for willfully failing to appear at his status hearing, and imposed a sentence of two months and twenty-eight days to five months and twenty-nine days county incarceration. The court also revoked parole and probation and sentenced Appellant to three and one-half to seven years state incarceration. During the reading of the conditions of Appellant's sentence, the following exchange occurred:

APPELLANT: Three and half to seven years in state prison?

THE COURT: Excuse me. Don't interrupt, sir. Do you want a second contempt on top of that? As conditions of my sentence, you are to complete drug treatment –

APPELLANT: You're kidding.

THE COURT: -- and continuing to talk while the Court is talking.

APPELLANT: I'm ready to go.

THE COURT: As he is discussing, he said "I'm ready to go," he backed up his chair, talking while the Court is talking. His lawyer is trying to calm him down. This is the very behavior that was specifically described by the probation officer and the probation officer before. Specifically –

APPELLANT: What do you expect from a person? This is the fourth sentence you gave me for .4 grams of crack-cocaine. This is the fourth sentence you gave me. You gotta be kidding me. I'm locked up with .4 grams of cocaine. This is the fourth sentence she gave me. Eleven and a half to 23 twice. And now three and a half to seven. Twelve more years. You got to be kidding me. You got to be kidding me.

N.T. VOP Proceeding, 7/8/15, at 20-21. Following an attempt by Appellant's counsel to calm him down, Appellant continued:

APPELLANT: She just gave me 12 years for .4 grams of cocaine. She can do whatever she want to do. She already do whatever she want to do. I'd like to ask on the record, are you high today? I want to put that on the record, too. Are you high today? Are you using cocaine right now? Are you using cocaine? I want that part of the record. When I go to appeal this stuff, I can have something on my record. You got to be kidding me. You got to be kidding me.

*Id*. at 21-22. The court found Appellant in direct contempt as a result of these statements in the presence of the court. Appellant was sentenced to an additional two months and twenty-eight days to five months and twenty-nine days incarceration to run consecutively with the aforementioned sentences. This timely appeal followed.

Appellant raises one issue for our review, whether he was "erroneously convicted of criminal contempt for expressing his frustration and dismay after the court imposed sentence, as there was insufficient evidence that he

possessed the requisite intent to obstruct justice or that his remarks actually caused an obstruction of justice[.]"  Appellant's brief at 3.  We find the record supports Appellant's conviction for direct contempt.

Use of the court's summary contempt power is reviewed under an abuse of discretion standard:

> [I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge.  Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs.  In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decisions.

*Commonwealth v. Williams*, 753 A.2d 856, 861 (Pa.Super. 2000) (citations omitted).

The power of the court to find a person in contempt derives from 42 Pa.C.S. § 4132(3) which states in pertinent part:  "The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases . . . the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."  Under this provision, there must be proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice.  *Commonwealth v. Moody*, 125 A.3d 1, 5 n.4 (Pa. 2015) (citations omitted).

Appellant concedes he engaged in misconduct in the presence of the court. He contends that his behavior was neither intended to obstruct the proceedings, nor did it actually obstruct the administration of justice. Appellant's brief at 9. Rather, Appellant maintains that his conduct, albeit disrespectful to the court, did not rise to the level of an obstruction of justice. *Id*. at 12.

The Commonwealth counters that Appellant's requisite intent may be inferred from his prior courtroom experience. Commonwealth's brief at 7. The Commonwealth reasons that Appellant was well aware of courtroom decorum based on his numerous appearances before the court. *Id*. at 8. In addition, the Commonwealth asserts that Appellant actually obstructed the administration of justice as his interruptions halted the proceedings while he called into question the court's capacity and ability to impose sentence. *Id*. at 9. We agree with the Commonwealth.

In regard to the intent to obstruct judicial proceedings, we have observed that "[t]here is wrongful intent if the contemnor knows or should reasonably be aware that his conduct is wrongful." ***Commonwealth v. Williams***, 753 A.2d 856, 862 (Pa.Super. 2000) (citation omitted). This Court has emphasized the role that an individual's courtroom experience bears on his intent to obstruct judicial proceedings, noting that the requisite intent can be shown where the individual "should have been aware of the effect that his comment would have on the courtroom proceedings." ***Id***. at

- 6 -

862. Indeed, we have concluded the intent element was satisfied where an appellant had appeared before the court as a criminal defendant on several occasions and, thus, "would be aware of the seriousness of court proceedings, the proper decorum to be observed during such proceedings and the proper respect to be accorded the trial judge." *Commonwealth v. Mutzabaugh*, 699 A.2d 1289, 1292 (Pa.Super. 1997).

By his own admission, Appellant appeared before the lower court on thirteen occasions relating to his underlying PWID conviction. Based on Appellant's previous courtroom experience, he knew or should have known that interrupting the court during his sentencing, in itself, is a breach of courtroom decorum. Nonetheless, Appellant continued to question the court's capacity and ability to render judgment upon him, even after being threatened to be held in contempt of court. Appellant's behavior in light of his presumed knowledge of the proper conduct in a judicial setting evidences a clear intent to interrupt the court's proceedings.

Finally, we conclude that Appellant's misconduct obstructed the administration of justice. We stated in *Williams*, *supra*, that an obstruction of justice is shown where the conduct "significantly disrupts judicial proceedings," either by "actual, imminent prejudice to a fair proceeding or **prejudice to the preservation of the court's orderly procedure and authority**." *Williams*, *supra* at 863. (emphasis in original, citation omitted). We upheld a conviction for contempt in *Williams*, where the

defendant said, "F--- You," and gave the middle finger to the judge after the sentence was imposed, *id*. at 859, finding such behavior was a "clear effort on [the defendant's] part to brazenly demonstrate his repudiation of the Court's sentencing choice." *Id*. at 863. Appellant's disturbance was no less brazen.

Furthermore, Appellant's comments challenging the court's capacity and ability were a direct affront to the court's authority to render judgment upon him.[4] As in *Williams*, such open defiance "flagrantly scorn[s] the Court's authority to impose such a sentence." *Id*. Thus, there was sufficient evidence to find that Appellant's misconduct was intended to obstruct judicial proceedings, and actually obstructed the administration of justice. The facts of record support the trial court's determination that Appellant was guilty of direct criminal contempt.

Judgment of sentence affirmed.

---

[4] Appellant cites to *Williams v. Williams*, 681 A.2d 181 (Pa.Super. 1996), for the proposition that a trial court's personal offense at comments do not constitute an obstruction of justice. Appellant's brief at 13. We find *Williams* is not dispositive, as Appellant's comments went beyond mere personal offense and called into question the court's capacity and authority over him. In addition, Appellant continued to disrupt proceedings even after being threatened with contempt.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/11/2016