J-S23040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MUHAMMAD ALI | : | |
| | : | |
| Appellant | : | No. 2355 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 17, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007378-2021

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 27, 2024**

Appellant, Muhammad Ali, appeals from the judgment of sentence following his bench convictions for strangulation and simple assault.[1] The case was reassigned to a new court for sentencing. Appellant failed to appear for sentencing and, after an evidentiary hearing was held, the court proceeded to sentence him *in absentia*. Appellant challenges the exercise of the court's sentencing discretion and its ruling to proceed *in absentia*. We affirm.

The record was aptly summarized by the court below, as follows:

At trial, the Commonwealth presented the testimony of the victim ("C.A."), the victim's sister ("K.A."), the victim's mother (Makkah Ali), and Philadelphia Police Officer Jabari Williams. The defense presented the testimony of the victim's grandmother (Rochelle Ali). Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following. On

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2718(a)(1) and 2701(a), respectively.

August 5, 2021, when C.A. was eight years old, he went with his mother and his sisters to visit his grandmother's house. Notes of Testimony ("N.T.") 5/12/22 at 20-21, 64. During C.A.'s visit to the two-story house, C.A. went to the downstairs living room with his sisters and a cousin while C.A.'s mother and grandmother remained upstairs. *Id*. at 22-24. At some point, defendant Muhammad Ali, who is an uncle of C.A., arrived at the home and went to the downstairs living room. *Id*. at 18-19, 25. While C.A. was playing with a toy gun, defendant took the toy gun away from C.A. *Id*. at 25-26. Defendant then began teasing C.A., repeatedly asking, "Are you mad? Are you sad?" *Id*. at 67. After C.A. continued to ask for the toy gun back, defendant stated, "You [sic] going to respect me." *Id*. at 68. Defendant, who is about six feet and three inches tall, then grabbed C.A., lifted him in the air, pinned him against a wall, and began choking his neck with both hands. *Id*. at 27-28, 68, 106. C.A. was unable to breathe as defendant choked him. *Id*. at 28. Defendant then turned C.A. upside down and began punching C.A. in the ribs with a closed fist while holding him in the air by his leg. *Id*. at 28-30, 68-69. At that point, C.A.'s sister, K.A., and a cousin tried to run upstairs to tell C.A.'s mother about what was happening, but defendant told them to sit down. *Id*. at 69-70. Eventually, defendant dropped C.A., who then attempted to run upstairs but was stopped by another uncle, Ramadan, who held C.A's arms behind his back. *Id*. at 22, 30-31. C.A. kicked back at Ramadan until he freed himself and ran upstairs to try to tell his mother about what defendant had done. *Id*. at 31. When C.A. arrived upstairs, he was out of breath and had difficulty speaking to his mother. *Id*. at 32-33, 83-84. C.A. was crying and red. *Id*. at 85. Defendant then came upstairs and hit C.A. in the head with an open hand, causing C.A. to fly across the room. *Id*. at 83-85. C.A.'s mother yelled, "Keep your hands off of him." *Id*. at 84. C.A.'s mother then took C.A. and her children out of the house and called the police. *Id*. at 86.

Within ten minutes, Officers Jabari Williams and Sean Turner of the Philadelphia Police Department arrived at the house. *Id*. at 87, 109-110, 112-113. While one of the officers was checking C.A.'s body, C.A.'s mother observed two hand marks on C.A.'s neck and red spots on C.A.'s ribs. *Id*. at 93. After speaking with C.A., defendant, and other members of the family, the officers arrested defendant. *Id*. at 88, 112-113. The following day, C.A.'s mother took C.A. to the hospital, where his ribs were X-rayed due to soreness and redness. *Id*. at 89. The X-ray results showed no evidence of fractures. *Id*. at 123.

Trial Court Opinion, 2-3.

Appellant waived his right to a jury and was tried before the Honorable Mia Perez on May 12, 2022. At the conclusion of the trial, the court found him guilty of strangulation and simple assault, and not guilty of recklessly endangering another person. N.T. 5/12/22, 147-148.

Sentencing was initially scheduled for July 2022, and after two continuances, for September 23, 2022. *See* Docket Entries; Trial Court Record, 7-8. On that date, the Defender Association of Philadelphia, which had represented Appellant at trial, was permitted to withdraw. *See Id*. Judge Perez appointed Jessica Mann, Esquire to represent Appellant. *See Id*. On October 17, 2022, the scheduled sentencing hearing was continued because Appellant was not brought to the courthouse from the prison. It was reported to the court that he refused to take a required COVID test. *See Id*.

On November 22, 2022, the sentencing hearing could not be held because Appellant again was not brought from the prison. It was reported to the court that he again refused to take a required COVID test. N.T. 11/22/22, 3. Defense counsel reported that Appellant had been on a "medical hold" after having been released from the hospital, but also had not been brought to the "last video visits" she had scheduled. *Id*., 3-4. The court contacted an official at the prison who confirmed that Appellant was refusing the COVID test. *Id*., 5. The court also informed the official of the problem getting Appellant to his video calls with his attorney. *Id*., 6. Counsel promised to tell Appellant to not refuse COVID testing. *Id*.

On December 1, 2022, Appellant was brought to the courthouse but refused to leave the holding area to go before the court. Counsel spoke to him, and reported to the court that Appellant did not trust counsel to act in his best interest because she had not met with him. N.T. 12/1/22, 2. Counsel represented to the court that after meeting with Appellant the issues had been addressed and Appellant was willing to continue with assigned counsel. *Id*. Counsel asked for a continuance. *Id*. The Commonwealth objected, but the court granted the continuance, noting the "tortured history" of the case, the need to amend the verdict page to conform to the verdict rendered and the appointment of new sentencing counsel as contributing to the delays. *Id*., 3.

On December 19, 2022, Appellant refused COVID testing again and was not brought to the courthouse from the detention center. N.T. 12/19/22, 3. The court told counsel to find out why Appellant has been refusing testing and rescheduled the sentencing hearing for January 23, 2023. *Id*., 3-4. The Commonwealth objected to the continuance to put counsel on notice that it would request proceeding *in absentia*. *Id*., 5-6.

The case was reassigned from Judge Perez to the Honorable Anthony G. Kyriakakis. On January 23, 2023, Appellant was not brought to the courthouse from the detention center. N.T. 1/23/23, 4. Prison authorities informed the court that Appellant was not brought to the courthouse because he had engaged in a fight with another inmate that morning at the detention center. *Id*., 4-5 The Commonwealth did not ask to proceed *in absentia*. Defense counsel asked to be removed from the case. *Id*., 6. She believed there was a

mental health issue with Appellant and he no longer would communicate with her. *Id*. Counsel did not believe she could effectively represent Appellant when he would not speak with her, and that would be true even if the court proceeded to sentencing *in absentia*. *Id*. The court continued the sentencing hearing, setting a date for a status of representation. *Id*., 6-7.

On January 30, 2023, the court permitted counsel to withdraw from representation. *See* Docket Entries; Trial Court Record, 12-13. The court appointed Jules Szanto, Esquire, to represent Appellant at sentencing, which was scheduled for Monday, March 13, 2023. *See Id*. On that date, newly-appointed counsel informed the court that Appellant wanted to proceed *pro se* and wanted the documents and discovery that counsel had in order to prepare. N.T. 3/13/23, 3. Counsel had intended to give Appellant the file at the courthouse but forgot to bring it with him. *Id*. Due to counsel's court schedule that day, he would not be able to get the file until later. *Id*., 4. The court informed counsel that Appellant was not yet at the courthouse and so put the matter on hold. Later that day the court continued sentencing to March 17. 2023, because both counsel and the court were busy. *Id*., 5-6.

On Friday, March 17, 2023, Appellant was not brought to the courthouse from the detention center. The report from prison authorities was that he refused to come to the courthouse. The court wanted the sergeant that had communicated with Appellant to testify before it decided how to proceed. N.T. 3/17/23, 3. Sergeant Jorell Durham explained that Appellant had told an officer that he refused to go to the courthouse. The sergeant along with other

officers went to Appellant's cell to speak with Appellant. The sergeant explained that without a court order he could not physically force Appellant to go to court. Appellant told the officers that they would have to fight him to get him to leave his cell. *Id*., 6-9. The court noted that it had intended to colloquy Appellant on his decision to proceed *pro se* and had continued the matter from earlier in the week to do so. *Id*., 11.

The Commonwealth moved to proceed *in absentia*. N.T. 3/17/23, 12. It noted that before the current judge had been assigned, Appellant had twice refused to come to court for a sentencing hearing and had twice requested new counsel. *Id.* It argued that by refusing to come to court, Appellant was willfully absenting himself from the proceedings without cause and that Pa.R.Cim.P. 602 permitted sentencing *in absentia*. *Id*., 11-12. Appellant's counsel noted that Appellant had been at the courthouse on Monday of that week and had expected then to speak with the court about proceeding *pro se*. *Id*., 13-15. Counsel then argued that Appellant was absent with cause because his refusals to appear in court stemmed from his distrust of counsel. *Id*., 15. Counsel suggested that this absence derived from Appellant's frustration on Monday to have come to court and not been heard about representing himself, or, for that matter, obtaining the file from counsel that he required to adequately represent himself. *Id*., 16-17. Counsel represented that he gave Appellant's social worker the file to deliver to Appellant in prison midweek. *Id*., 16.

The court noted that it was counsel's conflicts, not the court's, that prevented holding a hearing on Monday. N.T. 3/17/23, 17. The court recognized that Appellant had a right to proceed *pro se*, and it had been ready to hold a hearing on the exercise of that right. **Id**., 18. It ruled that by refusing to come to court today, Appellant had declined to exercise that right in an appropriate fashion. **Id**. If this were an isolated incident, the court would be inclined to continue the matter, but Appellant's behavior fit a pattern of Appellant refusing to come to court each time the sentencing was likely to be held. **Id**., 18-19. The court then found, "based on all the evidence that's been presented, the evidence on the record, the docket, the evidence today, that the defendant's absence today for a Sentencing Hearing is without cause, and the sentencing proceedings will proceed today, and we will impose sentence on the defendant." **Id.**, 19.

Following a recess, the court held a full sentencing hearing. It determined that Appellant's prior record gave him a Repeat Felon status. N.T. 3/17/23, 20-27. The sentencing guidelines for the strangulation conviction was 60 months to 72 months incarceration in the intermediate range and for the simple assault conviction 21 to 30 months in the intermediate range. After hearing extensive argument based on the pre-sentence investigation report and the difficult circumstances of Appellant's childhood, the court imposed consecutive terms in the mitigated range or under, of: 54 to 108 months incarceration on the strangulation conviction; and three years' probation for the simple assault conviction. **Id**., 54.

Appellant, through counsel, timely filed a post sentence motion on March 27, 2023, seeking reconsideration on the ground that Appellant's failure to appear at the sentencing was not willful. Motion for Reconsideration, 1-2; Trial Court Record, 98-99. The court granted a hearing. Appellant testified by video. He stated that he was in the courthouse on March 13, 2023, expecting to be brought to the courtroom. He was not. He knew he was expected to appear on March 17, 2023, but could not. He was "very sick" on that date with a sore throat. The COVID testing that had been in place had been discontinued. Appellant therefore did not know whether he had COVID. He told a correctional officer he was sick, and that was the reason he did appear on March 17th. N.T. 6/9/23, 14-15. He also denied being in a confrontation with correctional officers that day, and believed it was the person in the cell next to him that became confrontational and refused to go to the courthouse. *Id*., 16. Appellant admitted to refusing COVID tests on several dates to avoid coming to court, but asserted it was because he had been badly beaten in a prison fight and then hospitalized and had not fully recovered from his injuries, and while in the hospital did not have proper clothing to come to court. *Id*., 16-18, 20. Appellant claimed to have no memory of why he did not appear at the December 19, 2022 listing. *Id*., 18-20. Similarly, he claimed to have no memory of why he did not come to court on January 23, 2023, but denied that he had been in a fight with other inmates. *Id*., 21.

The court denied reconsideration by order dated July 13, 2023. Order, 7/13/23; Trial Court Record, 101. In the order, the court stated it found

Appellant's "testimony was not credible" based on what he said and his demeanor at the reconsideration hearing. *Id*., n.1. The order included a proof of service indicating that counsel was served by first class mail and Appellant was served by certified mail. Order, 7/13/23, Certificate of Service; Trial Court Record, 102.

Appellant filed a *pro se* Notice of Appeal, with a handwritten date of July 18, 2023.[2] Notice of Appeal, 1-2; Trial Court Record, 103-104. The post mark on the envelope indicates it was received by the post office on August 29, 2023.

On September 12, 2023, the sentencing court issued to Appellant an Order pursuant to Pa.R.A.P. 1925 for him to file a Concise Statement of Errors to Be Raised on Appeal. Rule 1925(b) Order; Trial Court Record 107.

On October 2, 2023, sentencing counsel filed a motion to withdraw as counsel, stating that he advised Appellant that an appeal would lack merit but Appellant had filed a *pro se* Notice of Appeal. Motion to Withdraw, 10/2/23, 2-3; Trial Court Record, 113-114. The court granted the motion on October 6, 2023, and appointed present counsel to represent Appellant. Order, 10/6/23; Trial Court Record, 116. On October 16, 2023, the court granted Appellant's request for an extension of time to file his Rule 1925(b) Statement. Order, 10/16/23; Trial Court Record, 118.

---

[2] On the Certificate of Service attached to the Notice, Appellant asserted that (final) sentencing counsel refused to file an appeal on his behalf on the ground that there was "no appeal issue." Notice of Appeal, Certificate of Service; Trial Court Record, 105.

On November 8, counsel filed the ordered Rule 1925(b) Statement. It raised three enumerated issues: (1) whether the evidence was sufficient at trial; (2) whether the sentence imposed was an abuse of discretion in that the court failed to consider all of the sentencing factors; and (3) whether the court erred in imposing a sentence in the upper range of the guidelines without considering mitigating factors. Rule 1925(b) Statement, 1-2; Trial Court Record, 119-120.

In its written opinion, the lower court noted that Appellant's *pro se* Notice of Appeal was untimely filed. Trial Court Opinion, 2, 4-5. It also addressed each of the three claims raised in Appellant's counselled Rule 1925(b) Statement.

In his brief, Appellant lists four enumerated questions, as follows:

1. Whether the trial court erred and abused its discretion in conducting [Appellant's] sentencing *in absentia* while he was being held in custody?

2. Whether a defendant has the absolute right to be present at all stages of the criminal proceedings against him, including sentencing?

3. Whether the trial court violated [Appellant's] constitutional right to be present during his sentencing hearing?

4. Whether [Appellant's] absence from sentencing was without cause and he did not knowingly and voluntarily waive his right to be present for sentencing?

Appellant's Brief, 6.

We must first turn to whether the *pro se* Notice of Appeal was timely filed, as it affects whether we have jurisdiction over this appeal.

*Commonwealth v. Burks*, 102 A.3d 497, 500 (Pa. Super. 2014). The trial court notes that the *pro se* Notice "was self-dated July 18, 2023," but was "postmarked August 29, 2023, and received by" the court on September 5, 2023. Trial Court Opinion, 4. It discerns from the fact that the postmark was "17 days after the filing deadline of August 12, 2023," that this Court could "properly infer that [Appellant] did not deliver the notice of appeal to prison authorities by the filing deadline," and so could not avail himself of the benefit of the prisoner mailbox rule. *Id*., 5. *See also Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011) ("a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing"). The Commonwealth joins the trial court's analysis and asks us to quash. Appellee's Brief, 13. Appellant argues that he was not "properly advised that he had thirty (30) days within which to file his notice of appeal, *i.e.*, a breakdown in the court's operation" that would permit us to entertain the appeal. Appellant's Brief 18.

We note that that trial court's order denying reconsideration states clearly that a notice of appeal "must be filed within thirty days of the date of the entry of this Order." Order, 7/13/23; Trial Court Record, 101. In addition, the certificate of service demonstrates it was sent on July 13 directly to Appellant by certified mail. We could infer further that Appellant received the order as he "self-dated" the notice of appeal for July 18, 2023.

Although the order denying reconsideration contains a certificate of service, the docket available for our review does not contain an entry

indicating that the order was served. "The time for the filing of a notice of appeal runs from the order's 'entry' … [which] occurs for present purposes on the day the clerk of the trial court mails or delivers copies of the order to the parties[.]" **Commonwealth v. Midgley**, 289 A.3d 1111, 1116 (Pa. Super. 2023) (internal citations omitted). Service of the order, however, must comply with Rule 114 which, among other things, mandates that the relevant docket entries include the "the date of service of the order or court notice." Pa.R.Crim.P. (C)(2)(c). "Where the trial court docket in a criminal case does not indicate service on a party or the date of service, we will not quash the appeal or require further proceedings." **Midgley**, 289 A.3d at 1117. Instead, "when there is a docketing failure or lack of notice, this Court will excuse an untimely appeal." **Commonwealth v. Powell**, 290 A.3d 751, 757 n.12 (Pa. Super. 2023).

Having determined that the appeal is properly before us, we must now discern what, if any, issue Appellant properly preserved and raised for our consideration. Appellant filed the ordered Rule 1925 Statement, raising three claims: a challenge to the sufficiency of the evidence at trial and two challenges to the exercise of the court's sentencing discretion. **See** Rule 1925(b) Statement, 1-2; Trial Court Record, 119-120. The trial court addressed all three claims demonstrating that they were without merit. Trial Court Opinion, 5-12. Appellant has not forwarded any of these claims in his appellate brief, and therefore has abandoned them on appeal. **See Commonwealth v. Williams**, 753 A.2d 856, 860 n.3 (Pa. Super. 2000)

- 12 -

("issue pertaining to the robbery sentence … has not been presented by Appellant to our Court in his brief, hence we deem it to have been abandoned").[3]

Instead, Appellant has briefed whether the trial court properly sentenced him *in absentia*, in four separately enumerated questions. Appellant did not include in his Rule 1925(b) Statement any claim with respect to the court's decision to sentence him *in absentia*. Nor did the trial court address such claim.

Where, as here, "the trial court orders an Appellant to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925, any issue not contained in that statement is waived on appeal." ***Commonwealth v. Rolan***, 964 A.2d 398, 409 (Pa. Super. 2008) "Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) (quoting ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)). ***See also*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). Accordingly, any claim with respect to the trial

---

[3] We note that Appellant's post-sentence motion did not include any challenge to the discretionary aspects of his sentence, but only sought reconsideration of the court's decision to sentence him *in absentia*. "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Gibbs***, 981 A.2d 274, 282-83 (Pa. Super. 2009). Had Appellant forwarded either of the discretionary sentence claims in his brief, we likely would have found them to have been waived.

- 13 -

court's ruling that Appellant had voluntarily failed to appear in court at the time set for sentencing is unreviewable on appeal.

Appellant attaches to his brief a putative Rule 1925(b) Statement self-dated November 26, 2023, that is different than the the one he filed on November 8, 2023. In the attached statement he ostensibly raised a claim the trial court erred by proceeding to sentence him *in absentia*. **See** Appellant's Brief, Attachment B. That statement is dated more than two weeks after his ordered statement was due. The record does not show he was given permission to file a second or otherwise untimely statement. Additionally, the statement does not appear to have been filed. There is no "filed" stamp on it, it is not listed in the docket entries, and it is not included in the record certified to this Court. Moreover, the trial court filed its Rule 1925(a) opinion more than two weeks later, on December 15, 2023, yet makes no mention of this later statement in its opinion and does not address the issue raised in it. This second, either unfiled or unauthorized, Rule 1925(b) Statement does not preserve Appellant's claim on appeal. **See Commonwealth v. Schoefield**, 888 A.2d 771, 773-774 (Pa. 2005) (finding appellant's claims waived on appeal where they were raised in a Rule 1925(b) statement she appended to her brief, but which did not have a time stamp from the prothonotary of the lower court and was not contained in the certified record); **Commonwealth v. Zingarelli**, 839 A.2d 1064, 1075-76 (Pa. Super. 2003) (appellant's claim waived on appeal where his Rule 1925(b) statement was not timely filed and the trial court did not address the claim in its opinion).

We can only conclude that this putative Rule 1925(b) Statement was never filed properly and does not exist for the purposes of appellate review. Pa.R.A.P. 1921, *Note* ("An appellate court may consider only the facts which have been duly certified in the record on appeal"). "We admonish counsel that evidence *de hors* the record is wholly inapplicable to our review." ***Commonwealth v. Nasir***, 308 A.3d 812, 819 n.4 (Pa. Super. 2023).

In the alternative, we discern no error in the trial court's ruling that sentencing should proceed *in absentia*. "The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence." Pa.R.Crim.P. 602(a). Appellant's right to be present at a particular stage of litigation can be waived by "words or actions." ***Commonwealth v. Rodriguez***, 670 A.2d 678, 679 (Pa. Super. 1996). ***Accord Commonwealth v. Hilburn***, 746 A.2d 1146, 1149 (Pa. Super. 2000). If a defendant willfully absents himself from the sentencing hearing, he may be sentenced *in absentia*. ***Commonwealth v. Bond***, 693 A.2d 220, 223-24 (Pa. Super. 1997); ***Commonwealth v. Ah Thank Lee***, 566 A.2d 1205, 1206-07 (Pa. Super. 1989).

"[B]efore exercising its discretion to proceed *in absentia,* a trial court must weigh the specific circumstances of the case such as the probability that the defendant will return and the difficulty of rescheduling." ***Hilburn***, 746 A.2d at 1149. ***See also Commonwealth v. Wilson***, 712 A.2d 735, 738 (Pa. 1998) (the rules permit a "court to exercise its discretion in deciding whether

to continue in the defendant's absence if the defendant is missing without cause"). "The burden of proving that the defendant's absence is without cause is upon the Commonwealth by a preponderance of the evidence." Pa.R.Crim.P. 602, comment. *See Commonwealth v. Kelly*, 78 A.3d 1136, 1143 (Pa. Super. 2013), (noting "patently inconsistent" statements on which party bears the burden and stating "the safest course of action is to view the proceedings as requiring the Commonwealth to have proven by a preponderance of the evidence that Appellant was absent without cause"), *overruled in part by Commonwealth v. King*, 234 A.3d 549, 570-571 (Pa. 2020) (discussing merger principles). "[W]hen a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent 'without cause' and therefore cannot be tried *in absentia.*" *Kelly*, 78 A.3d at 1143.

The record shows that Appellant knew of his scheduled sentencing hearings and had repeatedly and purposefully avoided coming to court on those dates. In particular, the sentencing court found, that Appellant, who was incarcerated while awaiting sentencing, refused to appear for multiple sentencing hearings. On three occasions – October, 17, 2022; November 22, 2022; and December 19, 2022 – he prevented himself from being transported to the courthouse for sentencing by refusing to take the necessary COVID test. N.T. 11/22/22, 3-6; N.T. 12/19/22, 3-6; N.T. 1/23/23, 5; N.T. 6/9/23,

20.[4] On the morning of the January 23, 2023 scheduled date for sentencing, Appellant engaged in a fight with other inmates and as a direct result could not be transported to the courthouse for sentencing. N.T. 1/23/23, 4-5.

On March 17, 2023, a date scheduled for sentencing with Appellant's third counsel, Appellant was not brought to the courthouse because he refused to leave his cell in the prison. N.T. 3/17/23, 3. The court held a hearing to determine whether it should proceed to sentencing in Appellant's absence. At the hearing, the court heard testimony from the sergeant who worked in the facility where Appellant was incarcerated. He testified that when the officers attempted to transport Appellant to court that morning, he was "disruptive" and let the officers know "that they were going to have a fight if they tried to get him out of the cell or they would have a fight if they attempted to handcuff him or search him or anything else." N.T. 3/17/23, 7. According to the sergeant, Appellant "very aggressively" said things such as, "Do whatever you all got to do, I'm not going down there." *Id*., 7-8. Because the officers did not have a court order directing them to use physical force to bring the resistant Appellant into court, they did not transport him to court. *Id*.[5]

_____

[4] Appellant admitted at the reconsideration hearing to intentionally refusing the required COVID testing to avoid being brought to court. *See* N.T. 6/923, 19-20.

[5] Appellant denied at the reconsideration hearing that he refused to come to court on March 17, 2023, and claimed the sergeant confused him with the prisoner in the neighboring cell. *See* N.T. 6/9/23, 16. He claimed he did not come to court because he was sick with a sore throat on that date. *See id.*, *(Footnote Continued Next Page)*

In addition to hearing the sergeant's testimony, the court also reviewed the docket entries, which showed that Appellant had repeatedly refused to come to court for sentencing. N.T. 3/17/23, 10-12, 18. Appellant's attorney conceded "there's a history of refusal to come to court." *Id*., 15. Based on this record, the court found that Appellant had refused to come to court "without cause" and therefore it was proper to sentence him *in absentia*. *Id*., 18-21. The court acknowledged that Appellant apparently had concerns regarding his representation, and the court made clear that it would have been willing to address those concerns if defendant had appeared in court. *Id*., 18-19, 21.[6] But, the court explained, "what [defendant] does not have a right to do is simply refuse to come to court, and to do so repeatedly, as he has done in this case." *Id*., 19, 21. Following this ruling, the court conducted a full sentencing hearing, during which Appellant was represented by his attorney, and the sentence terms imposed were in the mitigated range or below. *Id*., 20-56.

The court held a reconsideration hearing. Appellant testified to his reasons for refusing to appear in court in the fall of 2022 and on March 17, 2023. The trial court found this testimony not credible. Order, 7/13/23 n.1;

---

15. The trial court found Appellant not credible based on his testimony and demeanor. Order, 7/13/23 n.1; Trial Court Record, 101.

[6] The only date in more than six months on which Appellant allowed himself to be transported to the courthouse was the prior Monday, March 13, 2023. On that date, Appellant knew he would not be sentenced and expected to appear before the court for approval to represent himself and to obtain his attorney's file in order to prepare for sentencing. *See* N.T. 3/17/23, 3-6.

Trial Court Record, 101.[7] Accordingly, in denying the reconsideration motion, the court stated that "[t]he record in this case, including the credible testimony of Sergeant Jorrell Durham given at the sentencing hearing held on March 17, 2023, established that defendant was absent from his sentencing hearing without good cause and, as a result, that it was proper for the Court to sentence defendant *in absentia*." ***Id***. We agree. ***See Hilburn***, 746 A.2d at 1149-50 (trial court did not abuse its discretion by sentencing appellant *in absentia* where appellant did not have good cause for her absence on the day of sentencing and was knowingly and voluntarily absent); ***Commonwealth v. Bond***, 693 A.2d 220, 223-24 (Pa. Super. 1997) (trial court did not abuse its discretion by sentencing appellant *in absentia*, as appellant voluntarily absented himself from the proceedings without cause).

Appellant only contends that, based on his testimony, he was sick on March 17, 2023, and therefore his absence was not voluntary. Appellant's Brief, 17. Appellant ignores the trial court's explicit finding that his testimony at the reconsideration hearing was not credible, and its explicit finding that the sergeant's testimony that Appellant refused to leave his cell on March 17, 2023, was credible. As a result, Appellant's argument that the trial court

_____

[7] Notably, Appellant testified to a failure of memory to explain why he did not appear at scheduled sentencing hearing in December 2022 and January 2023. ***See*** N.T. 6/9/23, 20-21. He admitted to the possibility that, as was reported to the court, he had refused the required COVID testing in December. ***Id***., 20. He denied that he engaged in a fight with other inmates, as was reported to the court, on January 23, 2023, but could not recall any reason for not attending the scheduled sentencing hearing. ***Id***., 21.

abused its discretion is based on testimony that we cannot consider on appeal. *See Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa. Super. 2006) (As a general rule, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence"). Based on the evidence the trial court found credible and Appellant's multiple unilateral refusals to appear in court documented in the record, we find the trial court did not abuse its discretion to sentence Appellant *in absentia* on March 17, 2023. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024