**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 71 MAP 2020 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 1646 EDA 2019 dated |
| | : | May 28, 2020 Affirming the Judgment |
| v. | : | of Sentence in the Chester County |
| | : | Court of Common Pleas, Criminal |
| | : | Division, at No. CP-15-CR-4353-2016 |
| SHERON JALEN PURNELL, | : | dated March 18, 2019. |
| | : | |
| Appellant | : | ARGUED: April 14, 2021 |
| | : | |

**OPINION**

**CHIEF JUSTICE BAER**                                  **DECIDED: September 22, 2021**

We granted allowance of appeal in this matter to consider the appropriate test to apply to a trial court's determination concerning whether a witness in a criminal case may utilize a "comfort dog" for support during his or her trial testimony. We hold that a trial court should balance the degree to which the accommodation will assist the witness in testifying in a truthful manner against any possible prejudice to the defendant's right to a fair trial. Here, the trial court allowed a witness to testify with the assistance of a comfort dog, and the Superior Court concluded that the trial court did not abuse its discretion in this regard. For the reasons stated below, we agree with the Superior Court and, therefore, affirm that court's judgment.

**I. Background**

On October 3, 2016, Kevin Jalbert ("Victim") was shot seven times in Coatesville, Pennsylvania, and died as the result of the shooting. Several persons witnessed the incident, including Justin Griest and A.H.[1] Appellant was identified as the shooter, and the Commonwealth charged him with first-degree murder, third-degree murder, and firearms not to be carried without a license.

Prior to Appellant's trial, the Commonwealth filed two motions that are relevant to the instant appeal. First, the Commonwealth filed a motion explaining that, when a Chester County detective interviewed A.H. on the day of the murder, she informed him that she witnessed the shooter pull out his gun and that, before the shooter fled the scene, he saw her and pointed his gun at her. Commonwealth's Motion *In Limine* for the Admissibility of Witness Intimidation, 11/14/2018, at ¶2. A.H. also reported that she observed a gang in the area of the incident on the day of the shooting. *Id.*

This motion further explained that, on September 2, 2018, almost two years after the shooting, A.H. was with Justin Griest when he was assaulted at a gas station in Coatesville. *Id.* at ¶5. When police interviewed A.H. about the assault, she stated that she was afraid to speak about the group who committed the act because they were part of the gang that she saw when Victim was murdered. *Id.* at ¶6. A.H. also shared that she did not want to testify about the assault because she feared that someone from the gang would shoot her. *Id.* at ¶7. On November 7, 2018, A.H. provided police with an audio and video recorded statement regarding the assault on Griest and her fear of retaliation. *Id.* at ¶8. Concerned that A.H. may refuse to testify at Appellant's trial in a manner consistent with the statement that she gave to police on the day of the shooting, the Commonwealth asked the trial court, *inter alia*, to allow it to present to the jury A.H.'s November 2018 statement regarding the intimidation that she and Griest suffered. *Id.* at ¶¶ 10-13.

---

[1] A.H. was 13 years old at the time of the shooting. N.T., 11/19/2018, at 11.

On the same day that the Commonwealth filed this motion *in limine*, it also filed a motion entitled "Commonwealth's Motion for Special Procedures During the Presentation of the Testimony of Child Witnesses" ("Motion for Special Procedures"). Pertinent to the instant appeal, the Commonwealth requested that a "comfort dog"[2] be present during A.H.'s trial testimony. Motion for Special Procedures, 11/14/2018, at ¶3. The motion explained that a sheriff's deputy would transport the comfort dog, Melody, to the court and that the dog would enter the courtroom before the jury's entrance. *Id.* at ¶4. According to the motion, the comfort dog would be placed in the witness stand outside the presence of the jury and would exit the courtroom after the jury left the room. *Id.*

On November 19, 2018, the trial court held a hearing on several motions, including those described above. During the course of that hearing, it was revealed the A.H. is autistic. N.T., 11/19/2018, at 30. In addition to explaining its motion regarding the comfort dog, the Commonwealth noted that the dog was trained for the purpose of accompanying witnesses in court. *Id.* at 50. In response to the Commonwealth's motion, Appellant's counsel stated his concern that the jury would see the dog and feel sympathy for A.H. *Id.* Defense counsel also feared that A.H. may comment on the presence of the dog given her alleged propensity to get distracted. *Id.* at 50-51.

The trial court acknowledged Appellant's concerns and conceded that it had no experience with comfort dogs in the courtroom. *Id.* at 51-52. When the court asked the prosecutor whether A.H. needed the assistance of a comfort dog due to her autism, counsel replied that the dog was necessary due to A.H.'s fear for her safety. *Id.* at 53. The court reserved making a decision on the issue.

---

[2] The Commonwealth did not provide a definition of the term "comfort dog" in its motion. As mentioned *infra*, at the hearing on this motion, the Commonwealth explained that the dog was trained to accompany witnesses in court.

On the day that the Commonwealth intended to call A.H. as a witness at trial, the trial court announced its ruling concerning the use of the comfort dog. The court explained that, while it found case law on the issue from other jurisdictions, it was unable to locate any Pennsylvania jurisprudence that addressed the use of comfort dogs in courtrooms. N.T., 11/28/2018, at 4-5. The court then ruled that it would permit the comfort dog to accompany A.H. during her testimony, though the court asserted that it would refer to the animal as a "service dog" to lessen the likelihood that the dog's presence would engender sympathy from the jury. *Id.* at 5.

The trial court further explained that the dog would be hidden under the witness stand but that it nonetheless was likely that the jury would notice the dog. *Id.* at 6. The court announced the manner in which it would manage the situation as follows:

> Therefore, the plan will be for the sheriff handler assigned to Melody out of the presence of the jury to walk into the courtroom with the witness, with Melody, they'll be situated together on the witness stand. The witness will not be called to the stand. She'll be in the stand when the jury arrives in the courtroom, just like Mr. Griest was for a different reason yesterday. So the jury has participated in that circumstance where a witness has already been on the stand when they come into the courtroom. And the sheriff handler will stand to the side of the witness box, just like we've had numerous uniformed sheriffs in this courtroom throughout the trial, so that won't be of any particular note to the jury, I wouldn't think.

> And if I understand from the sheriff handler that Melody if she gets excited has a pretty strong tail wag, so it wouldn't surprise me if there was some tail banging on the jury box, and I'll just simply make a reference to Melody that - I'm not sure what I'll say - glad to know she's still alive or something to that effect.

*Id.* at 6-7.

At that point, the trial court allowed Appellant to place his objection on the record, and he renewed his complaint that the presence of the dog would distract A.H. and create sympathy for her, prejudicing Appellant. *Id.* at 7-8. Although Appellant's counsel

appreciated that the court would instruct the jury not to feel any sympathy for A.H., he stated his belief that the jury would have a difficult time following that instruction. *Id.* at 8.

Immediately before A.H. began her testimony, the trial court instructed the jury in the following manner:

> Members of the jury, I have permitted out of your view a service dog to be present with this witness within or actually under the witness box. The dog is present there now. The fact that I have permitted the presence of a service dog shall not be considered by you for any purpose. Particularly, you are not to attribute any sympathy to the witness because of this or for any other reason, nor shall you assess the credibility of her testimony differently than that of any other witness simply because of the presence of the service dog.

*Id.* at 63.

The Commonwealth then began to question A.H. The substance of her testimony is irrelevant to the issues presented in this appeal. We, however, note that there is nothing in the record to suggest that the comfort dog was in any way disruptive to the trial. We also observe that, after A.H. had been questioned for some time on the witness stand, the trial court called for a brief recess to allow A.H. to recover her composure, as she had started to weep. *Id.* at 98-106.

After the parties presented their evidence and gave their closing arguments, the trial court provided the jury with its general instructions. Pertinent to the instant matter, the court repeated the instruction that it gave to the jury before A.H. testified. N.T., 11/30/2018, at 71. The jury found Appellant not guilty of first-degree murder but guilty of third-degree murder and firearms not to be carried without a license. The trial court sentenced Appellant to 20.5 to 47 years of imprisonment. Appellant filed post-sentence motions, which were denied. He then timely filed a notice of appeal and subsequently a statement pursuant to Pa.R.A.P. 1925(b).

In that statement, Appellant indicated that, on appeal, he intended to argue, *inter alia*, that the trial court erred by allowing A.H. to testify with the assistance of a comfort dog. The

trial court briefly responded to this issue in its Pa.R.A.P. 1925(b) opinion. Trial Court Opinion, 8/23/2019, at 6-7. The court noted that: (1) its legal reasoning for allowing the dog to be present could be found on the record; (2) the dog was situated under the witness box prior to the jury entering the courtroom and could not be seen by the jury, and (3) it provided instructions to the jury concerning the presence of the dog.

## II. Superior Court Opinion.

On appeal to the Superior Court, Appellant argued that the trial court erred by allowing the comfort dog to be with A.H. on the witness stand because: (1) the dog's presence generated sympathy within the jury to Appellant's prejudice; and (2) the Commonwealth failed to establish the necessity for the use of the dog. The Superior Court rejected these arguments and ultimately affirmed Appellant's judgment of sentence in a published opinion. *Commonwealth v. Purnell*, 233 A.3d 824 (Pa. Super. 2020).

In so doing, the Superior Court stated that "[t]he use of comfort dogs for witnesses with mental, psychological, or emotional conditions appears to be a matter of first impression in Pennsylvania[.]" *Id.* at 834. The court then began its analysis by explaining, *inter alia*, that trial judges have the well-established power to maintain courtroom authority and must have broad discretion to keep control of their courtrooms. According to the court, "[t]his power to control courtroom proceedings includes the power to control the mode and order of examining witnesses and presenting evidence[.]" *Id.* at 835.

In support of this statement, the Superior Court relied upon Pennsylvania Rule of Evidence 611(a), which provides as follows:

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
>> (1) make those procedures effective for determining the truth;
>>
>> (2) avoid wasting time; and
>>
>> (3) protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a).  The court observed that appellate courts review the application of Rule 611 deferentially and for an abuse of discretion.  *Purnell*, 233 A.3d at 835.

Next, the Superior Court highlighted that, while Pennsylvania courts have not addressed the issue in this case, "appellate courts in multiple other jurisdictions have held that it is within a trial court's discretion to permit a witness to use a support animal, as part of each judge's power to manage trial conduct."  *Id.* at 835-36 (collecting cases).  The court then stated that it would utilize these decisions to guide its review of whether the trial court in the matter *sub judice* abused its discretion by allowing A.H. to testify with the help of a comfort dog.  *Id.* at 836.

At this point, the Superior Court turned its focus to Appellant's contention that allowing the Commonwealth's witness to use a dog to assist with testifying prejudices the defendant, largely because it suggests that the witness is vulnerable and worthy of sympathy.  In response, the court explained that "[a]ll of the courts which have examined a challenge to the use of a comfort dog in a courtroom have concluded that the dog's presence is not inherently prejudicial."  *Id.* (collecting cases) (footnote omitted).

The Superior Court then noted that the instant case shares striking similarities to a recent decision of the Court of Appeals of Georgia, *Jones v. State*, 841 S.E.2d 112 (Ga. Ct. App. 2020).  *Purnell*, 233 A.3d at 836-37.  According to the Superior Court, in *Jones*, the defendant objected to a State witness' use of a comfort dog on the basis that the dog would generate sympathy for the witness, who had post-traumatic stress disorder, and would prejudice the defendant's defense strategy.  The Superior Court observed that, like in the instant matter, the trial court in *Jones* investigated the issue outside the jury's presence, ascertained the witness' condition and need for the support animal, and considered the dog's training.  *Id.* at 837.

Moreover, the Superior Court stated, "The trial courts in both cases[, *i.e.*, the Georgia trial court and the trial court in the instant matter,] also consulted with counsel to employ procedures designed to minimize the dog's presence and visibility to the jury." *Id.* (citations and internal quotation marks omitted). The Court of Appeals of Georgia ultimately concluded that the trial court did not abuse its discretion by allowing the State's witness to testify with the help of a comfort dog during a criminal trial.

Utilizing *Jones* as a template, the Superior Court held that Appellant failed to demonstrate that he was harmed by the trial court's decision. More specifically, the court concluded, "Given that the trial court in the current action likewise followed procedures to minimize the dog's presence, we equally cannot assume that the dog had any impact on the jurors, much less that it engendered sympathy for A.H." *Id.* at 837. The court observed that, like the defendant in *Jones*, Appellant "had made the unsubstantiated assumption that the dog generated sympathy without any evidence in support thereof and ignoring the fact that some people are afraid of or dislike animals, especially dogs." *Id.*

After finding no merit to Appellant's prejudice argument, the Superior Court stated in a footnote that, when faced with a question of whether a State witness' use of a comfort dog prejudiced a criminal defendant, the Supreme Court of Connecticut adopted a balancing test in *State v. Devon D.*, 138 A.3d 849 (Conn. 2016). *Id.* at 837 n.11. In that case, the Supreme Court of Connecticut held that a "trial court should consider the particular facts and circumstances for the request to have a dog accompany the particular witness, the extent to which the dog's presence will permit the witness to testify truthfully, completely and reliably, and the extent to which the dog's presence will obviate the need for more drastic measures to secure the witness' testimony." *Id.* The Court then noted that a "trial court should balance these factors against the potential prejudice to the defendant and the availability of measures

to mitigate any prejudice, such as limiting instructions and procedures to limit the jury's view of the dog." *Id.*

After explaining the Connecticut Supreme Court's balancing test, our Superior Court noted that the trial court in the matter *sub judice* did not apply that test. The Superior Court, however, declined to require the retroactive use of that test. The court nonetheless determined that Connecticut's balancing test appears to be an appropriate assessment for this issue and advised trial courts to employ it moving forward. *Id.*

Lastly, the Superior Court addressed Appellant's contention that the Commonwealth failed to establish in the trial court that the use of a comfort dog was a necessity in securing A.H.'s testimony. *Id.* at 838. The court reported that its "review of case law concerning the use of comfort items and animals in courtrooms demonstrates that the majority of jurisdictions have concluded that a finding of 'necessity' or 'need' is not required in order for the trial court to allow the presence of such items or animals, provided that such item or animal alleviates the stress that the witness may experience on the stand and hence helps the witness to testify truthfully and completely." *Id.* at 839 (collecting cases). The court found no compelling reason to disregard this rationale and ultimately rejected Appellant's position that, for a trial court to allow a witness to utilize a comfort dog, the court must find that the presence of the dog is necessary to secure the witness' testimony. *Id.* at 839-40.

### III. Petition for Allowance of Appeal.

Appellant filed a petition for allowance of appeal in this Court, which we granted to address the following issues, as framed by Appellant:

(1) Did the Superior Court err in affirming the trial court's decision to permit a dog to accompany a testifying witness?

(2) Mindful of the rights of the accused, should a showing of need for special accommodation be required prior to its allowance?

*Commonwealth v. Purnell*, 243 A.3d 4 (Pa. 2020).

# IV. Parties' Arguments.[3]

## A. Appellant's Argument.[4]

Appellant insists that the trial court abused its discretion by allowing A.H. to utilize a comfort dog when she testified. Appellant submits that many states that have addressed this issue have employed a balancing test. According to Appellant, these states balance the ability to gain truthful testimony from a witness by reducing his or her trauma against the potential prejudice to the defendant.

After summarizing several of these cases, Appellant asserts that the trial court abused its discretion by employing the allegedly extraordinary measure of allowing A.H. to use a comfort dog without making appropriate findings. For example, Appellant contends that the court failed to appreciate that the Commonwealth provided no reason for the special accommodation in its motion *in limine*. Further, at the pretrial hearing on the motion, when asked by the trial court to identify the reason for the request, the Commonwealth did not

---

[3] Both of the issues in this case concern the test a trial court should apply when the Commonwealth seeks to have a witness testify with the assistance of a comfort dog. We, therefore, address these issues and the parties' arguments together. This issue of first impression presents the Court with a question of law. Accordingly, our scope of review is plenary, and our standard of review is *de novo*. *Commonwealth v. Hill*, 238 A.3d 399, 410-11 (Pa. 2020).

[4] In his brief to this Court, Appellant presents several arguments, two of which we will dispose of in this note. First, Appellant argues that the trial court violated his constitutional right to due process by allowing A.H. to testify with the aid of a comfort dog. Appellant's Brief at 22-24. Appellant has waived this claim by raising it for the first time on appeal. Pa.R.A.P. 302(a).

Second, Appellant dedicates a significant amount of his brief attempting to draw incongruent parallels between allowing a witness to use a comfort dog and permitting a child victim to testify by alternative means, such as video depositions. As argued by the Commonwealth, there simply is no meaningful comparison to be made between these two concepts. Allowing a child to testify by alternative means intersects with a defendant's constitutional right to confront witnesses and has nothing to do with this case. Accordingly, further discussion of this contention is unnecessary.

specify the witness' age or developmental disability, but only mentioned A.H's concern for her safety. Appellant observes that, at one point during the proceedings, defense counsel merely mentioned his belief that A.H. was autistic, but the Commonwealth continued to emphasize that the dog was needed to help A.H. feel safe.

In addition, Appellant argues, there was no testimony regarding whether utilizing the comfort dog would help A.H. provide truthful testimony. In support of his position, Appellant relies on, among other cases, a decision of the Michigan Court of Appeals, *People v. Shorter*, 922 N.W.2d 628 (Mich. Ct. App. 2018), where the court found that a trial court had erred in allowing a non-disabled adult to be accompanied by a support dog during her testimony. Appellant points out that, in reaching this decision, the Michigan court opined that it was not "convinced that allowing a support animal or person so that the witness would be better able to 'control her emotions' necessarily aids the truth-finding process." Appellant's Brief at 36 (quoting *Shorter*, 922 N.W.2d at 634-35).

Appellant also submits that the trial court erroneously made a *sua sponte* finding that A.H.'s autism necessitated the special accommodation. According to Appellant, this autism "finding" was not based on any evidence presented by the Commonwealth prior to the court allowing the comfort dog to accompany A.H. Appellant further asserts that the court erred by failing to make a record regarding whether this special procedure was a necessary measure to avoid trauma and to obtain truthful, reliable testimony. Without these findings, Appellant argues, the trial court's ruling was manifestly unreasonable and an abuse of discretion.

Building on his position that the trial court should have made a record regarding the need for the comfort dog's assistance, Appellant reports that other states have passed legislation addressing the usage of dogs in courtrooms. Appellant maintains that, as of 2016, Arizona, Arkansas, Florida, Hawaii, Illinois, and Oklahoma had passed legislation

outlining the requirements for allowing a dog to be present in a courtroom. According to Appellant, two states explicitly require the prosecution to show that a special measure is necessary to facilitate the witness' testimony: (1) Delaware has adopted a "substantial need" standard; and (2) Hawaii has embraced a similar "compelling necessity" standard.

While Appellant acknowledges that many states have refused to adopt the "substantial need" or "compelling necessity" standards, he nonetheless maintains that some of those states at least require an "implicit" finding of necessity. In sum, Appellant urges this Court to adopt a rule requiring a trial court to determine whether the accommodation is necessary to avoid trauma for the witness and whether it will enable truthful testimony before allowing a witness to testify with the aid of a comfort dog.

**B. Commonwealth's Argument.**[5]

The Commonwealth begins its argument by agreeing with the Superior Court that the use of a comfort dog is governed by a trial judge's authority over what occurs in his or her courtroom under Pa.R.E. 611. According to the Commonwealth, this power includes the discretion to control the mode and order of examining witnesses and presenting evidence. The Commonwealth highlights that appellate courts are deferential to trial courts' application of Rule 611. Indeed, the Commonwealth asserts, appellate review of a Rule 611 decision is limited to whether the trial court abused its discretion.

As to the present circumstances, the Commonwealth believes that the trial court did not abuse its discretion by allowing A.H. to utilize a comfort dog while testifying. The Commonwealth posits that there is absolutely no basis to claim that a comfort dog portrays any of the characteristics that Appellant alleges or creates inherent prejudice against a

---

[5] The following parties jointly filed an *amicus* brief in support of the Commonwealth: Animal Legal Defense Fund, Association of Prosecuting Attorneys, and Lutheran Church Charities. The Pennsylvania Office of Attorney General and the Pennsylvania District Attorneys Association also jointly filed an *amicus* brief in support of the Commonwealth.

defendant. First, the Commonwealth asserts, while dogs are a well-liked species, not every person feels comfortable around them. Indeed, the Commonwealth posits, it is just as likely that a member of a jury would dislike dogs as would find them endearing.

Second, the Commonwealth recounts that the trial court did not make any reference to the dog accompanying A.H. being a "comfort dog;" instead, the court referred to the dog as a "service dog." Along these lines, the Commonwealth highlights that the trial court instructed the jury not to have sympathy for the witness because of the presence of the dog, and we must presume that the jury followed this instruction.

Next, like the Superior Court, the Commonwealth believes that this case is substantially similar to the Georgia Court of Appeals' decision in *Jones*, *supra*. In fact, the Commonwealth fully endorses the Superior Court's use of *Jones* in affirming the trial court's decision. Third, the Commonwealth asserts that the jury never saw the comfort dog because the trial court specifically crafted a plan to keep the dog out of the jury's view.

The Commonwealth also refutes Appellant's allegation that the trial court abused its discretion in allowing the use of the comfort dog without making appropriate findings. In this regard, the Commonwealth observes that the trial court held several hearings and discussions about the comfort dog before announcing its plan for allowing a generally inconspicuous "service dog" to accompany A.H. The Commonwealth concedes that it never informed the trial court that A.H. was autistic. It, however, submits that defense counsel brought up A.H.'s autism before discussion of the comfort dog had even started, rendering it unnecessary for the Commonwealth to reiterate this fact. In short, the Commonwealth contends that the trial court's decision to allow A.H. to utilize a comfort dog was not a result of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

In the alternative, the Commonwealth argues that if this Court finds that using Rule 611 is insufficient for a trial court to evaluate properly the use of a comfort dog, then the

Court should adopt the balancing test from the Connecticut Supreme Court case of *Devon D*, *supra*, *i.e.*, the balancing test endorsed by the Superior Court.[6] The Commonwealth understands that the trial court in the instant matter did not utilize specifically this test, but it believes that the court conducted a substantially similar analysis.

Regarding Appellant's contention that the Commonwealth should have been required to prove that the use of a comfort dog was necessary to procure A.H.'s testimony, the Commonwealth suggests that there is no easy way to prove need definitively, let alone special need, in these types of circumstances. Invariably, the Commonwealth avers, such a process would require a pretrial hearing with expert witnesses, and testimony from the actual witness would be difficult, as questions could not tread on trial issues that may traumatize the witness. By way of example, the Commonwealth recognizes that the trial court in the instant matter could have held more hearings regarding A.H.'s use of a comfort dog. However, the Commonwealth posits that it is unknown how A.H. would have fared emotionally during that hearing, especially given the difficulties that she encountered during her trial testimony.

Ultimately, the Commonwealth agrees with the Superior Court that a particular finding of necessity should not be mandated before a trial court may exercise its discretion to permit a comfort dog to accompany a witness. In this regard, the Commonwealth observes that most courts in other jurisdictions do not require such a finding, especially those courts that have decided the issue in recent years.

## V. Analysis.

---

[6] We respectfully reject the contention that this situation presents an "either/or" scenario. As our discussion below will make clear, we conclude that Rule 611 is applicable herein, and that it is appropriate to adopt the Connecticut Supreme Court's balancing test in applying the rule to the issue presented.

As a general matter, it is indisputable that trial courts have broad discretion in controlling trial conduct. *See Behr v. Behr*, 695 A.2d 776, 778 (Pa. 1997) ("This Court has long upheld a court's power to maintain courtroom authority."). In furtherance of this traditional understanding of trial court control over trial conduct, this Court adopted Pennsylvania Rule of Evidence 611, set forth *supra* at 6-7.[7] Relevant to the instant matter, Rule 611 clearly and unambiguously confers upon trial courts reasonable control over the mode of examining witnesses and the ability to employ procedures aimed at determining the truth. Pa.R.E. 611(a)(1). We hold that this language is sufficiently comprehensive to allow a trial court to consider whether a comfort dog may assist a witness in testifying in a truthful manner during a trial.[8]

Regarding a more specific standard that trial courts should utilize when called upon to address a witness' use of a comfort dog during trial, like the Superior Court, we find convincing the balancing tests adopted by our sister states, particularly the standard enunciated by the Connecticut Supreme Court in *Devon D.*, *supra*. As noted above, in that case, the Court considered, *inter alia*, whether the trial court abused its discretion by allowing a dog to sit near a witness during her testimony to provide comfort and support. *Devon D.*, 138 A.3d at 861. Similar to Appellant, the defendant in that case argued that the trial court abused its discretion by allowing the witness to the use a comfort dog on the ground that the dog may have lead the jury to sympathize with the witness, to the defendant's prejudice. *Id.* at 862. The Connecticut Supreme Court rejected this argument.

---

[7] To the extent that we interpret Rule 611, we observe that, when interpreting the Rules of Evidence, we ascribe "to the words of those rules their plain and ordinary meaning." *Commonwealth v. Brown*, 52 A.3d 1139, 1176 (Pa. 2012).

[8] As the Superior Court observed, this holding aligns with several persuasive opinions of our sister states. *See, e.g., State v. Millis*, 391 P.3d 1225, 1233 (Ariz. Ct. App. 2017) ("In keeping with the trial court's 'broad discretion' in managing trial conduct, this court will not disturb a trial court's ruling regarding the use of a facility dog absent an abuse of discretion.").

In so doing, like this Court, the Connecticut Supreme Court initially concluded that trial courts possess the broad discretionary authority to permit the use of comfort dogs to assist witnesses to testify reliably. *Id.* at 865. Next, the Court rejected the notion that a trial court must expressly find that the special accommodation was necessary for the witness to testify. According to the Court, "the pivotal question is not whether the special procedure is necessary but whether it will aid the witness in testifying truthfully and reliably." *Id.* The Court noted that, "[b]ecause truthful and reliable testimony is an essential component of a fair trial, a finding that an accommodation will help a witness to testify more reliably also constitutes a finding that the accommodation is necessary." *Id.* at n.13.

After the Connecticut Supreme Court surveyed decisions from other jurisdictions, it concluded that, while a trial court may exercise its discretion to permit a dog to provide support to a testifying witness, the court "must balance the extent to which the accommodation will help the witness to testify reliably and completely against any possible prejudice to the defendant's right to a fair trial." *Id.* at 867. In so doing, "[t]he trial court should consider the particular facts and circumstances for the request to have a dog accompany the particular witness, the extent to which the dog's presence will permit the witness to testify truthfully, completely and reliably, and the extent to which the dog's presence will obviate the need for more drastic measures to secure the witness' testimony." *Id.* Lastly, the Connecticut Supreme Court explained, "The trial court should balance these factors against the potential prejudice to the defendant and the availability of measures to mitigate any prejudice, such as limiting instructions and procedures to limit the jury's view of the dog." *Id.*

After careful consideration, we adopt this well-reasoned standard for purposes of Pennsylvania jurisprudence. In our view, this balancing test appropriately guides a trial court to consider carefully the extent to which a comfort dog may assist a witness with providing

truthful testimony, while balancing the need for that accommodation against potential prejudice to defendant. We find particularly persuasive the requirement that a trial court seek to minimize any potential prejudice to the defendant by, *inter alia*, considering the dog's training, providing the jury with limiting instructions, and employing means to limit the jury from viewing the dog.

Obviously, this standard did not exist in Pennsylvania law at the time that the trial court in the matter *sub judice* was called upon to determine whether A.H. should be permitted to use a comfort dog during her trial testimony. We nonetheless conclude that the trial court exercised its discretion in a manner that substantially comports with the test. First, by way of the Commonwealth's motions *in limine*, the trial court was put on notice that: (1) A.H. was a juvenile that allegedly witnessed Appellant shoot and kill Victim; (2) A.H. was with Justin Grist when he allegedly was attacked by Appellant's fellow gang members in an attempt to intimidate him from testifying at trial; (3) A.H. feared that if she testified about this incident or against Appellant, she may be shot; and (4) to allay A.H.'s fear of testifying, the Commonwealth was prepared to provide A.H. with a comfort dog.

The trial court then wisely held a hearing to address the Commonwealth's motions, at which it was revealed that A.H. was autistic and that the comfort dog was trained to accompany witnesses in court. The court ultimately permitted A.H. to utilize the dog during her testimony. However, in so doing, the court utilized several measures to mitigate against any potential prejudice the comfort dog could have caused Appellant. The court: (1) referred to the animal as a "service dog" to lessen the likelihood that the dog's presence would engender sympathy from the jury; (2) required that the dog enter and exit the courtroom outside of the jury's presence and that the dog remain hidden under the witness stand throughout A.H.'s testimony; and (3) twice instructed the jury not to consider the presence of the dog for any purpose, not to attribute any sympathy to A.H., and not to judge her

credibility any differently. Importantly, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001).

## VI. Conclusion.

For the reasons explained above, we conclude that trial courts have the discretion to permit a witness to testify with the assistance of a comfort dog. In exercising that discretion, courts should balance the degree to which the accommodation will assist the witness in testifying in a truthful manner against any possible prejudice to the defendant's right to a fair trial and employ means to mitigate any such prejudice. We further note that an abuse of discretion occurs when a court "has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Gill*, 206 A.3d 459, 466-67 (2019).

Here, we discern no abuse of discretion on the part of the trial court. Indeed, despite any guidance in the law, the court considered the Commonwealth's contention that A.H. would be more likely to testify in a truthful manner with the support of a comfort dog. In addition, the court balanced that consideration against any potential prejudice the presence of the dog may cause Appellant. Lastly, the court mitigated any potential prejudice by employing multiple appropriate measures. Accordingly, we affirm the Superior Court's judgment, which affirmed Appellant's judgment of sentence.

Justices Saylor, Todd, Dougherty, Wecht and Mundy join the opinion.

Justice Donohue files a concurring opinion.