J-A12039-23

2023 PA Super 171

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BASILE OUTLAW | : | |
| | : | |
| Appellant | : | No. 1788 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 21, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-MD-0000031-2022

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY McLAUGHLIN, J.: **FILED SEPTEMBER 20, 2023**

Basile Outlaw appeals the judgment of sentence imposed for his conviction for direct criminal contempt.[1] He challenges the sufficiency of the evidence. We affirm.

Outlaw attended a hearing on a motion to suppress, on June 16, 2022, as a spectator. As the judge finished announcing her findings on the motion, Outlaw stood up and yelled, "The judge is a cocksucker." N.T., 6/16/22, at 10.[2] Outlaw left the courtroom, and the deputy sheriff went to look for him. Outlaw later voluntarily returned, and the sheriff placed him in custody. *Id.* at 10-11. The court held a brief hearing the same day during which it obtained the deputy sheriff's sworn testimony. *Id.* at 6, 11. The deputy testified that after the court made its decision on the suppression motion, Outlaw "got up

---

[1] 42 Pa.C.S.A. § 4132(3).

[2] *See also* N.T., 6/21/22, at 4.

and said, the judge is a cocksucker." *Id.* at 6. Outlaw replied that he did not say "'the judge,' specifically." *Id.* The court then took a brief recess to obtain counsel for Outlaw. *Id.* at 8. When the proceeding resumed, the court placed a summary of the facts on the record and said it would be holding a contempt hearing. *Id.* at 10-11. Outlaw's counsel stated that she "concede[d[3]] this contempt, the direct contempt, under *Commonwealth v. Moody*."[4] *Id.* The court then continued the contempt hearing and set Outlaw's bail at $75,000. *Id.* at 11-12.

At the continued hearing, the court placed on the record its findings of fact. N.T., 6/21/22, at 4. The court said that after Outlaw's outburst, it stopped the proceeding and asked, "What did you say?" *Id.* The court stated that Outlaw replied, "[N]ever mind," and left the courtroom. *Id.* A sheriff went after him but could not find him, and "[s]ome discussions were held regarding the outburst, which interrupted the proceeding." *Id.* at 5. The court stated that Outlaw then returned to the courtroom and was placed in custody. The court then afforded Outlaw an opportunity to speak on his own behalf, and he expressed remorse. *Id.* at 16. He said that when he returned to the courtroom

---

[3] We will not treat counsel's "concession" as a bar to appellate review of Outlaw's sufficiency claim. Doing so would render the statement tantamount to a guilty plea, and nothing of record shows that Outlaw himself decided to concede guilt. It appears that counsel was attempting to express Outlaw's acceptance of responsibility rather than effectively enter a guilty plea on his behalf. *See Commonwealth v. Meehan*, 235 A.3d 1284, 1288 (Pa.Super. 2020).

[4] *See Commonwealth v. Moody*, 125 A.3d 1 (Pa. 2015).

- 2 -

on the day in question, he was "coming back to apologize for the outburst and disrespect." ***Id.*** at 18. Outlaw's counsel stated that Outlaw was "apologetic" and asked the court to allow Outlaw to be released. ***Id.*** at 6, 18. The court imposed a sentence of 15 to 30 days' incarceration with credit for time served. This timely appeal followed.

Outlaw raises one issue in this appeal: "Did the trial court err in finding [Outlaw] guilty of direct criminal contempt because the evidence was insufficient to establish the elements of the offense because it did not in any way, let alone any significant way, obstruct the proceedings?" Outlaw's Br. at 3.

"Direct criminal contempt consists of misconduct in the presence of the court or misconduct so near thereto as to interfere with the immediate business of the court or disobedience to the lawful process of the court." ***In re Campolongo***, 435 A.2d 581, 583 n.4 (Pa. 1981).[5] "[I]n considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs." ***Commonwealth v. Williams***, 753 A.2d 856, 861 (Pa.Super. 2000)

---

[5] ***See also Commonwealth v. Patterson***, 308 A.2d 90, 92 (Pa. 1973) ("'A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily[.]'" (quoting ***Knaus v. Knaus***, 127 A.2d 669, 671 (Pa. 1956)); ***Williams***, 753 A.2d at 861.

(citation omitted). Our review is confined to examining the record to determine if the facts support the trial court's decision. ***Id.***[6]

Pennsylvania courts have "inherent power and statutory authority to impose summary punishment for direct criminal contempt[.]" ***Moody***, 125 A.3d at 9. The applicable statutory provision empowers courts "to issue attachments and to impose summary punishments for" certain circumstances, including "[t]he misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." 42 Pa.C.S.A. § 4132(3). A conviction for direct criminal contempt under Section 4132(3) requires "proof beyond reasonable doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice." ***Moody***, 125 A.3d at 5 n.4.

Outlaw concedes that there was sufficient evidence of the first three elements – misconduct in the presence of the court with the intent to obstruct the proceedings. He only challenges the sufficiency of the evidence to establish the fourth element: the obstruction of the administration of justice. ***See*** Outlaw's Br. at 22-24. He disputes the court's findings that when he committed his outburst it stopped the suppression proceeding, and that certain events happened during the suppression hearing before the court called a recess. He maintains that the record from the underlying suppression hearing does not show that the court stopped the proceeding or that the

---

[6] ***See also Commonwealth v. Mutzabaugh***, 699 A.2d 1289, 1292 (Pa.Super. 1997).

matter was paused, delayed, or altered due to Outlaw's conduct. *Id.* at 26. He also argues that his conduct did not "demonstrate a refusal to accept the court's power to decide the motion[.]" *Id.* at 36. He claims that his actions did not disrupt the court from doing its job and that there is no evidence that he refused to comply with the court's orders or warnings to him.

The Commonwealth agrees that Outlaw's outburst did not constitute an obstruction of the administration of justice. It concedes that there was an interruption in the proceedings but is of the astounding opinion that the interruption was "*de minimis*." Com. Br. at 10. It argues that "the hearing on the motion to suppress was adjourned in a timely manner and that the proceedings only continued as necessary to locate[] an attorney to represent defendant and to hold his contempt hearing." *Id.* at 9.

To the extent Outlaw challenges the lower court's findings of fact, his arguments turn on the transcript of the underlying suppression hearing, which he repeatedly cites. *See* Outlaw's Br. at 25-30. But we cannot determine if that transcript supports the trial court's findings because it is not in the certified record of the instant case.

Our standard of review directs us to conduct an "examination of the record to determine if the facts support the trial court's decision." *Williams*, 753 A.2d at 861 (citation omitted). We are unable to perform that function here without the notes of testimony from the underlying suppression hearing. The transcript on which Outlaw relies is not from the present matter. It relates to a separate criminal case to which Outlaw was not a party, and the lower

court would not, in the ordinary course, have placed it in the record of this case on its own. Nor did Outlaw ever attempt to put it into evidence in the contempt proceeding below or otherwise take steps to ensure that it would be before us.[7] It was ultimately Outlaw's duty as appellant to make sure that the certified record contained all items necessary for this Court to decide his issue on appeal. Outlaw waived his factual arguments by failing to ensure that the notes of testimony from the suppression hearing were in the certified record of this case. *See Commonwealth v. Saranchak*, 675 A.2d 268, 275 (Pa. 1996). We therefore accept the trial court's factual recitation for purposes of this appeal.

We can, however, review Outlaw's legal argument that the events here – the facts as the trial court found them – were insufficient to constitute direct criminal contempt. He maintains this is so because, in his view, the conduct at issue did not prevent, and was not likely to prevent, the court from "doing its job." Outlaw's Br. at 31.[8]

---

[7] *See*, *e.g.*, *Mutzabaugh*, 699 A.2d at 1291-92 (holding that transcripts of proceedings at which contumacious conduct occurred were admissible at subsequent contempt hearing over hearsay and confrontation objections).

[8] Outlaw makes a further argument that only "where the defendant's actions directly undermined the court's authority by encouraging others to disrupt proceedings or ignore orders is contempt sustained." Outlaw's Br. at 33. That contention, as we understand it, goes to the misconduct element, which Outlaw has conceded. Insofar as he discusses *Mutzabaugh*'s treatment of the obstruction element, we find that case highly apposite here, as explained below. *See id.* at 35-36.

The evidence here was sufficient. An obstruction of the administration of justice occurs where the conduct at issue "significantly disrupt[s] judicial proceedings," either by "actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority." *Williams*, 753 A.2d at 863 (citation and emphasis omitted). While "[n]either injudicious remarks nor affronts to the dignities or sensibilities of the court," without more, constitute an obstruction to the administration of justice, the element is met where there has been a "significant disruption" of proceedings. *Mutzabaugh*, 699 A.2d at 1293.

The requisite "significant disruption" can be met in varied circumstances, including those occurring "even [after] the judicial proceeding has concluded." *Commonwealth v. Falana*, 696 A.2d 126, 129 (Pa. 1997). In *Falana*, the conduct at issue occurred at a sentencing hearing, after the court had pronounced sentence but while the judge was still on the bench. As the sheriffs were taking the defendant from the courtroom, he said to the victim, who had just testified against him, "I'll be out one day." *Id.* at 127-28. The Pennsylvania Supreme Court rejected the defendant's argument that he had not obstructed the administration of justice because he made the remark after the sentencing hearing had ended. The Court found it sufficient that "[t]hrough his words" he had "belittled the trial court's attempt to administer justice and protect" the victim. *Id.* at 129. It explained, "To have permitted the Appellant to use the courtroom to intimidate his victim, and thereby possibly deter others from testifying in the future, would clearly

obstruct the efficient administration of justice and demean the court's authority." *Id.*

Similarly, in **Williams**, this Court sustained a finding of direct criminal contempt for conduct that occurred after the court had finished sentencing. There, as the defendant was being led from the courtroom, "he apparently elected to express his dissatisfaction" with his sentence "by raising his middle finger and stating, 'F--k You'" to the judge. **Williams**, 753 A.2d at 859. We pointed out that the obstruction element can be shown by "prejudice to the preservation of the court's orderly procedure and authority." *Id.* at 863 (citation and emphasis omitted). We found that standard satisfied there because the defendant's "reaction to the [c]ourt's imposition of sentence in open court was a clear effort on his part to brazenly demonstrate his repudiation of the [c]ourt's sentencing choice." *Id.* We stressed that if the court had been unable to summarily punish the defendant's misbehavior, "it would have eroded the [c]ourt's authority in the eyes of all those present":

> The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy.

*Id.* (quoting **Commonwealth v. Martorano**, 563 A.2d 1193, 1200 (Pa.Super. 1989)).

In another case similar to the present case, we found sufficient an interruption in which a criminal defendant used profane language toward the

judge and then attempted to leave the courtroom, requiring a deputy sheriff to chase after the defendant. In **Mutzabaugh**, while the court was colloquying the defendant in a criminal matter, the defendant became enraged and claimed he had been treated unfairly. The judge said, "We're done," and the defendant got up and started toward the door. **Mutzabaugh**, 699 A.2d at 1290. As he passed the judge, he said, "You can go to hell. Fuck you." **Id.** A deputy sheriff pursued him and caught him. We considered the defendant's remark, coupled with his attempt to leave the courtroom, sufficient to establish a significant disruption. We explained that "it was necessary for a deputy sheriff to pursue appellant and prevent his exit." **Id.** at 1293.

On the other hand, where there has been no disruption, a finding of direct criminal contempt cannot stand. For example, in **Behr v. Behr**, 695 A.2d 776, 777 (Pa. 1997), a *pro se* party in a child custody and support matter left in the courtroom a storage box that had the word "DEATH" written on its lid. It had been under counsel's table during the hearing but the judge had not seen it until a member of courtroom staff called it to his attention after the hearing. **Id.** at 777-78. The judge took testimony, but no one testified to seeing the word on the box lid during the original hearing. **Id.** at 778.

The Supreme Court found the evidence insufficient to prove direct criminal contempt because the "behavior [had] fail[ed] to disrupt courtroom proceedings[.]" **Id.** at 777. To the extent the trial court had found a significant disruption based on its reconvening of the hearing and the sheriff's search of the box, the Court found that reliance unavailing. It explained that if a court's

investigation of alleged misconduct were sufficient, then in every such case where the court has investigated misconduct, the obstruction element of direct criminal contempt would "automatically" be met. *Id.* at 779.

Similarly, momentary or transient delay, without more, does not rise to the level of significant disruption. In *Commonwealth v. Rubright*, 414 A.2d 106, 107 (Pa. 1980), the court overruled an objection and asked the attorney making the objection if he understood "the difference between hearsay for truth and falsity[.]" *Id.* The lawyer replied, "Yes I do. Do you understand it, Your Honor?" *Id.* The court responded that it would deal with counsel's "impertinence" later, and proceeded with the hearing. The Supreme Court found the evidence insufficient to prove direct criminal contempt. It explained that counsel's remarks were "of momentary nature" and the Court did "not find the progress of the hearing to have been impeded thereby." *Id.* at 110.

Likewise, in *Williams v. Williams*, 721 A.2d 1072, 1074 (Pa. 1998), a mere momentary break in proceedings was insufficient. There, when the trial judge sustained opposing counsel's objection, an attorney representing himself in a custody dispute said under his breath, "He's such a [f------- a------]." *Id.* at 1073, 1074 (alteration in *Williams v. Williams*). The trial judge did not hear the comment until opposing counsel called it to his attention. The court then briefly took the testimony of two witnesses about the remark and proceeded with the custody hearing. Afterward it held the attorney in direct criminal contempt. The Supreme Court concluded that the remark had caused no significant disruption as there had been only a "momentary break in the

proceedings." *Id.* at 1074 (quoting *Williams v. Williams*, 681 A.2d 181, 183 (Pa.Super. 1996)).

Other cases are in a similar vein. In *In re Campolongo*, 435 A.2d at 583, the only identifiable misconduct preceding the contempt citation was counsel's rhetorical question, while objecting to opposing counsel's examination of a witness, "Is there any reason why he's hostile to her?" The Supreme Court found an insufficient basis for a finding of direct criminal contempt because other than a short recess, there was "no disruption of the proceedings." *Id.* at 584. In *Meehan*, 235 A.3d at 1290, this Court found that despite an attorney's "laughter and snide comments," the judge proceeded with the matter at hand without significant disruption.

Here, the trial court did not commit a plain abuse of discretion in holding Outlaw in direct criminal contempt. This case is distinguishable from *Rubright*, *Williams v. Williams*, *Campolongo*, and *Meehan*, in that the disruption was not a passing comment standing alone or in combination with whatever investigation the trial court may have conducted. *See Behr*, 695 A.2d at 779. Rather, after Outlaw used profanity toward the trial judge, the judge interrupted the suppression hearing to ask him what he had said. A deputy sheriff was then taken away from his courtroom duties to look for Outlaw, and discussions in court about Outlaw's outburst further interrupted the proceedings. This case is much more like *Mutzabaugh*. There, we found the defendant's profane comments to the judge, together with his attempt to exit the courtroom that required a deputy sheriff to go after him and stop him,

sufficient to establish a significant disruption in the proceedings. *Mutzabaugh*, 699 A.2d at 1293. This was not an instance of a brief or momentary interruption.

Calling a judge an indecent name in open court undermines the court's authority and does obvious harm to its ability to conduct an orderly proceeding. *See Falana*, 696 A.2d at 129. Outlaw made his outburst in such a way that those in the courtroom heard the statement. In so doing, he not only demonstrated his own utter disrespect for the court and its command of the courtroom. He also potentially encouraged others to commit similar disruptions. Outlaw's conduct absolutely caused "actual, imminent prejudice" to "the preservation of the court's orderly procedure and the court's authority." *Williams*, 753 A.2d at 863. We affirm the judgment of sentence.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2023